126 Ariz. 227 (1980)
613 P.2d 1283
Norman GRIFFITH and Hannelore Griffith, husband and wife, Appellants,
v.
VALLEY OF the SUN RECOVERY AND ADJUSTMENT BUREAU, INC., an Arizona Corporation; Robert A. Dosenbach and Margaret F. Dosenbach, husband and wife d/b/a A-Able Adjusters; and Donald Gorney, Appellees.
No. 1 CA-CIV 4170.
Court of Appeals of Arizona, Division 1, Department B.
May 13, 1980.
Rehearing Denied June 23, 1980.
Review Denied July 8, 1980.
*228 O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C. by Jolyon Grant, P. Michael Whipple, Thomas A. McGuire, Phoenix, for appellants.
Burch, Cracchiolo, Levie, Guyer & Weyl, P.A. by Mike E. Bradford, J. Lawrence McCormley, John F. Day, Phoenix, for appellees.
OPINION
OGG, Chief Judge.
This is a negligence action based on a shooting that occurred during an attempted repossession of an automobile. The appellant-plaintiff, Norman Griffith, an innocent bystander, was injured by the accidental discharge.
In their complaint, Norman and Hannelore Griffith alleged that the appellees, a collection and repossession agency, its owners, and its employee, Donald Gorney, had attempted to repossess an automobile in such a careless and reckless fashion as to have precipitated the shooting. The appellees' motion for summary judgment was granted and this appeal followed.
The pertinent facts indicate that A-Able Adjusters had been contacted by American National Bank & Trust Co. regarding the repossession of a 1973 Lincoln Continental. The bank sent a letter to the adjuster which indicated that the car belonged to Miroslav Marsalek but was being driven by Bob Williams and Linda Marsalek. Don Gorney was employed by A-Able Adjusters. He was authorized by American National Bank & Trust to repossess the automobile. Employees of A-Able Adjusters had previously attempted to take possession of the car. However, their efforts were apparently frustrated by a car burglar alarm.
The deposition testimony of those present at the time of the shooting indicates that Mr. Gorney was aware of the prior attempts to repossess the car. Mr. Gorney was also aware of a violent confrontation that had occurred during one of the prior attempts. Nevertheless, he unscrewed the spotlight that lighted the area where the automobile was parked and then set off the alarm on the car sometime after 4:00 o'clock on the morning of April 30, 1977. He anticipated that the owner would then be forced to deactivate the alarm. The alarm aroused the neighbors and the police were called. Both Williams and Griffith noted that someone had unscrewed the light bulb and had tampered with the lock on the automobile.
Mr. Gorney then waited out of sight until the neighbors and police had left the scene. He then returned to take possession of the car. The alarm was still active and went off. As a result, Gorney's efforts to repossess were met with a great deal of verbal and physical resistance. A neighbor responding to what appeared to be an attempt to steal the car arrived at the scene armed with a shotgun. Williams shouted for the gun and as the neighbor passed the gun to Williams, it accidentally discharged and severely injured Norman Griffith.
I. NEGLIGENCE PER SE
The appellants raise three issues on appeal. They initially argue that the appellees were negligent per se because they instigated a breach of the peace in contravention of A.R.S. § 44-3149, which provides in part that:

*229 In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. (emphasis added)
However, negligence per se applies when there has been a violation of a specific requirement of a law or an ordinance. See generally W. Prosser, The Law of Torts § 36 (4th ed. 1971).
In Salt River Valley Water Users' Association v. Compton, 39 Ariz. 491, 8 P.2d 249 (1932), the Arizona Supreme Court stated:
Where a valid statute, enacted for the public safety, or governmental regulations made in pursuance thereof, provide that a certain thing must or must not be done, if a failure to comply with the regulations is the proximate cause of injury to another, such failure is actionable negligence per se. (emphasis added)
39 Ariz. at 496, 8 P.2d at 251. Similarly, in Deering v. Carter, 92 Ariz. 329, 376 P.2d 857 (1962), the court stated that:
When, as here, the statute does not proscribe certain or specific acts, but defines a standard of conduct against which the jury must measure the party's conduct, a finding that the party violated the statutory standard is a finding that the party was negligent. The words "per se" add nothing to the word negligent in this case, and are better reserved to describe those instances where certain acts or omissions constitute negligence without further inquiry into the circumstances or reasonableness of their occurrence.
Id. at 333, 376 P.2d at 860. (emphasis added). See Brand v. J.H. Rose Trucking Co., 102 Ariz. 201, 427 P.2d 519 (1967); Cobb v. Salt River Valley Water Users' Ass'n, 57 Ariz. 451, 114 P.2d 904 (1941).
Other jurisdictions have also limited the application of negligence per se to statutes which express rules of conduct in specific and concrete terms as opposed to general or abstract principles. See Northern Lights Motel, Inc. v. Sweaney, 561 P.2d 1176 (Alaska 1977); Sego v. Mains, 578 P.2d 1069 (Colo. App. 1978); Smith v. Cook, 361 N.E.2d 197 (Ind. App. 1977); Koppelman v. Springer, 157 Ohio St. 117, 104 N.E.2d 695 (1952).
A.R.S. § 44-3149 simply authorizes repossession "if this can be done without breach of the peace." It does not proscribe certain or specific acts. "[T]he facts of each individual case must be evaluated to determine if a breach of the peace has occurred." Walker v. Walthall, 121 Ariz. 121, 122, 588 P.2d 863, 864 (App. 1978). Consequently, we believe it would be inappropriate to apply the concept of negligence per se to a violation of the statute.
The official comments to UCC § 9-503 (A.R.S. § 44-3149) and to Article 9 in general also indicate that the concept of negligence per se should not be applied to A.R.S. § 44-3149. The comments to § 9-503 only discuss the protection offered to the security holder while the comment to § 9-101 states that:
This Article sets out a comprehensive scheme for the regulation of security interests in personal property and fixtures.
* * * * * *
The aim of this Article is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty. (emphasis added)
Self help repossession "has been recognized as an essential ingredient in commercial financing and serves to benefit both the creditor and the debtor." Mikolajczyk, Breach of the Peace and Section 9-503 of the Uniform Commercial Code  A Modern Definition for an Ancient Restriction, 82 Dickinson L.Rev. 351, 351-52 (1977/78). The various creditor advantages inherent in self help also benefit consumers in general by making credit available at lower costs. Id. See White, The Abolition of Self-Help Repossession: The Poor Pay Even More, 1973 Wis.L.Rev. 502, 522-23; Mentschikoff, Peaceful Repossession under the Uniform Commercial Code: A Constitutional and Economic Analysis, 14 Wm. and Mary L.Rev. 767, 772, 779 (1973).
A.R.S. § 44-2202(A) requires that "this chapter shall be liberally construed and applied *230 to promote its underlying purposes and policies." (emphasis added). Since an "underlying purpose" of Article 9 is to promote financial transactions "with less cost", a liberal construction of the statutes indicates that the application of negligence per se to violations of A.R.S. § 44-3149 would be an unwarranted constraint upon creditors seeking to assert their remedy of self help. Such a holding would be contrary to the aims of Article 9 as a whole and to the specific purpose of A.R.S. § 44-3149.
We therefore hold that a repossessor is not negligent per se simply because a breach of the peace has occurred. However, once a breach of the peace has occurred, a repossessor is no longer protected by the provisions of § 44-3149.
[W]hen appellee's agents ... committed a breach of the peace . . [they] lost the protective application of that section, and thereafter stood as would any other person who unlawfully refuses to depart from the land of another.
Morris v. First National Bank and Trust Company of Ravenna, 21 Ohio St.2d 25, 30, 254 N.E.2d 683, 686-87 (1970). While the appellees had the right to peacefully repossess their property, they are "responsible for any tortious acts committed during the repossession." Wisenhunt v. Allen Parker Company, 119 Ga. App. 813, 819, 168 S.E.2d 827, 831 (1969).
II. COMMON LAW DUTY
The appellants also argue that even if the appellees were not negligent per se, they owed a common law duty to Mr. Griffith and are liable for his injuries. Appellees contend that the injury was unanticipated and unforeseeable and consequently was outside of any duty owed to Griffith.
In the first instance, the determination of the duty (foreseeability of harm) issue is always a question of law for the court. If a reasonable person could not foresee the harm, then the trial court has a duty to dismiss the case. City of Scottsdale v. Kokaska, 17 Ariz. App. 120, 495 P.2d 1327 (1972). However, if reasonable minds could differ and there is a debatable question on the foreseeability of harm, then such an issue is ordinarily a question for the jury. City of Scottsdale v. Kokaska; Paul v. Holcomb, 8 Ariz. App. 22, 442 P.2d 559 (1968).
Similarly, in Arizona Public Service Co. v. Brittain, 107 Ariz. 278, 486 P.2d 176 (1971), the Arizona Supreme Court stated that:
In a case such as this where the establishment of the duty, i.e., foreseeability of harm, varies as a result of factual distinctions, we have held what is or is not negligence or what is foreseeable is a question for the trier of fact. Barker v. Gen. Petroleum Corp., 72 Ariz. 187, 232 P.2d 390 (1951); Seifert v. Owen, 10 Ariz. App. 483, 460 P.2d 19 (1969).
Id. at 280, 486 P.2d at 178. (emphasis added)
In the instant case, previous efforts to take possession of the car were frustrated by the car burglar alarm. Gorney was aware of the violent confrontation (involving attack dogs) that had occurred in a prior attempt. Gorney's actions in setting off the car alarm around 4:00 a.m., unscrewing the spotlight and then hiding while police investigated what appeared to be a burglary, created an explosive atmosphere in the immediate neighborhood. His persistence in again setting off the burglar alarm and his attempts to remove the car amid the created confusion set the stage for the resulting injury. Since this is a case in which reasonable minds could differ and in which the "foreseeability of harm varies as a result of factual distinctions", we hold that a jury question was presented as to whether a reasonable man could have foreseen that his actions were creating a confrontation where someone could be injured.
III. SUPERSEDING CAUSE
In their final argument, appellants contend that, contrary to the assertions of the appellees, the discharge of the forearm was not a superseding cause. We agree. In analyzing the concepts of intervening force and superseding cause in Zelman v. *231 Stauder, 11 Ariz. App. 547, 466 P.2d 766 (1970), this court stated that:
A review of the Arizona cases reveals that their holdings are consistent with the position taken by Restatement (Second) of Torts, that where defendant's negligent course of conduct (as distinguished from the risk of harm created) actively continues up to the time the injury is sustained, then any outside force which is also a substantial factor in bringing about the injury is a concurrent cause of the injury and never an "intervening" force. Worthington v. Funk, 7 Ariz. App. 595, 442 P.2d 153 (1968); Restatement (Second) of Torts Sec. 439 (1965). On the other hand, where the defendant's negligent course of conduct has terminated and only the risk of harm created by his prior negligent conduct is present at the time of injury then any outside force which is a substantial factor in bringing about the injury may be referred to as an intervening force. This distinction has variously been referred to in terms of "dynamic-static" negligence and "active-passive" negligence. Salt River Valley Water Users' Association v. Cornum, supra [49 Ariz. 1, 63 P.2d 639]; Herzberg v. White, supra [49 Ariz. 313, 66 P.2d 253]; Molloy, Jury Instructions in Negligence Cases, 6 Ariz.L.Rev. 27, 32 (1964). This conceptual distinction is more than one of semantics for the question of "superseding cause" arises only where the facts disclose that an intervening force is present. Thus, if under the facts of a case the outside force was a concurrent cause of the injury, the issue of "superseding cause" is never reached and defendant's negligence will always remain a proximate cause of the injury. This does not mean, however, that all intervening forces are superseding causes. City of Phoenix v. Schroeder, 1 Ariz. App. 510, 405 P.2d 301 (1965); Herzberg v. White, supra.
Id. at 550, 466 P.2d at 769. (emphasis added)
The repossessor, Donald Gorney, testified in his deposition as follows:
Q. So you were trying different procedures for starting this car at the time this conversation between you and Mr. Williams and Mrs. Williams yelling back and forth about what you were doing?
A. Right.
Q. Then what happened?
A. I looked over on the passenger side because I saw something moving, and there was a guy standing there in his underwear with a 12-guage [sic] shotgun pointed at me.
Q. Where was he standing?
A. Directly outside the passenger door.
Q. So you would look 
A. To my right.
Q. Directly to your right. And he would be right in the passenger window?
A. That's correct.
Q. Right front seat?
A. Right.
Q. How close was he to the car?
A. He had the gun up against the glass.
Q. Was it actually pointed right at you?
A. Yes, it was.
The deposition testimony of various witnesses differs as to what then transpired. However it is clear that Donald Gorney did not leave the scene until after Mr. Griffith had been shot.
In light of the reasoning in Zelman, we conclude that "the issue of superseding cause is never reached" because the conduct continued "up to the time the injury [was] sustained." We therefore hold that the trial judge erred in granting summary judgment on behalf of the defendants, and we remand this action for a trial on the merits.
EUBANK, P.J., and McFATE, J., concur.