167 P.3d 111

**Neil RAND and Shirlene Rand, husband and wife, Plaintiffs–Appellants,**

v.

**PORSCHE FINANCIAL SERVICES, Defendant–Appellee.**

No. 1 CA–CV 06–0636.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 18, 2007.

Reconsideration Denied May 23, 2007.

Neil and Shirlene Rand, Buckeye, Appellants, In Propia Persona.

Jennings Strouss & Salmon, PLC by John G. Sestak, Jr., John J. Egbert, Matthew J. Mansfield, Phoenix, Attorneys for Appellee.

## OPINION

WEISBERG, Judge.

¶ 1 Neil and Shirlene Rand appeal the trial court's grant of summary judgment in favor of Porsche Financial Services ("PFS") dismissing the Rands' claims of civil rights violations under 42 U.S.C. § 1983 and trespass and granting PFS a deficiency judgment arising out of the Rands' lease of a Porsche financed by PFS. For the following reasons, we reverse the trial court's rulings dismissing the Rands' § 1983 claim and trespass

claim, but we affirm its ruling granting PFS a deficiency judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On November 14, 2002, Neil Rand entered into a lease agreement for a 2003 Porsche, with financing provided by PFS. Under the terms of the lease agreement, Rand was to make monthly payments of $2,531.56. The failure to pay any monthly payment was a default. In the event of a default, PFS was granted the following remedies:

REMEDIES. If you are in Default, Lessor may terminate this Lease and Lessor may exercise any of its rights or remedies at law or as provided in this Lease, including recovering charges for early termination. If you are in Default, Lessor also has the right to take possession of the Vehicle. Lessor may, without use of force or other breach of the peace, enter the premises where the Vehicle is and take immediate possession of the Vehicle, including any equipment or accessories. If Lessor takes possession, you are not released from any obligation under this lease.

The lease also provided that if PFS terminated the lease early because of a default, it would be entitled to certain charges, including Early Termination Liability to be calculated as specified in the agreement. In calculating the Early Termination Liability, PFS was to subtract "the Realized Value of the Vehicle, which is the net amount, if any, Lessor receives from the sale of the Vehicle, sold at wholesale in a commercially reasonable manner." The agreement further stated:

If you disagree with the Realized Value of the Vehicle, within 14 days after you are given notice of your Early Termination Liability, you may obtain, at your own expense, from an independent third party agreeable to both you and Lessor, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.

¶ 3 Rand failed to make the monthly payments for September through December 2004. In January 2005, PFS engaged Interstate Recovery, Inc., an automobile repossession company, to enter the Rands' premises and take the vehicle, pursuant to the lease agreement. Interstate Recovery recovered the vehicle on January 7, 2005.

¶ 4 Neil Rand filed this action on January 10, 2005. The complaint alleged that PFS hired a car repossession company and authorized that company to enter his property to remove the vehicle. In so doing, the complaint further alleged that the repossession company breached the peace and committed trespass. Finally, the complaint alleged that, because he physically resisted the repossession, the Glendale police were called, that police involvement constituted state action, and that Rand's civil rights were therefore violated pursuant to 42 U.S.C. § 1983.

¶ 5 PFS issued a notice on January 12, 2005, that the vehicle would be sold at private sale. Later, by letter dated March 24, 2005, PFS notified Neil Rand that the vehicle had been sold on March 18, 2005 for $103,900.00 and that under the terms of the lease agreement, he owed a deficiency amount of $49,044.38. On March 29, 2005, PFS filed its answer to the complaint and a counterclaim for the deficiency amount. The parties subsequently stipulated to amend the complaint to add Shirlene Rand as a plaintiff. The amended complaint, answer, and counterclaim were otherwise essentially unchanged. PFS filed three motions for partial summary judgment: on the § 1983 claim, on the trespass claim, and on its counterclaim for the deficiency amount.

¶ 6 In its motion for summary judgment on the Rands' § 1983 claim, PFS argued that the repossession was pursuant to the contract and not under color of law. In their response, the Rands alleged that when they attempted to stop the repossession, individuals from the repossession company, Interstate Recovery, told them that they had contacted the Glendale Police Department and expected the police to come to assist in the repossession. The Rands also asserted that when the police arrived minutes later, they forced the Rands to allow the repossession of the vehicle. The Rands argued that, because the police were involved, the repossession

constituted a breach of the peace and occurred under color of law. The Rands provided no affidavit or other evidence to support their factual assertions.

¶ 7 The court granted partial summary judgment to PFS on the § 1983 claim. The court stated that the "repossession was made pursuant to the contractual agreement between the parties" and that there was no evidence that the repossession caused the private parties to be "jointly engaged with state officials." In addition, the court found that "Plaintiffs present[ed] no admissible evidence to support such a claim."

¶ 8 In its motion for partial summary judgment on the Rands' trespass claim, PFS asserted that it had an operable agreement with Interstate Recovery under which PFS might from time-to-time engage Interstate Recovery to repossess designated property financed by PFS. Pursuant to the agreement, entitled "Code of Conduct and Indemnification Agreement," Interstate Recovery was an independent contractor and agreed not to repossess property if to do so would require committing a trespass, breaching the peace, or violating a customer's rights. PFS asserted that it exercised no control over the actual performance of Interstate Recovery's services. PFS reasoned that it could not be held liable for the acts of an independent contractor and, because Interstate Recovery was an independent contractor, PFS could not be held liable if Interstate Recovery committed trespass while repossessing the vehicle.

¶ 9 The Rands responded that PFS was responsible for the acts of Interstate Recovery, and based on a statement by Jim Ray, a PFS employee, asserted that PFS reserved control over how Interstate Recovery conducted the repossession. Ray had stated that PFS engaged Interstate Recovery "to enter Mr. Rand's premises and take the 2003 Porsche automobile." The Rands also asserted the applicability of the "nondelegable duty exception," which would make PFS liable for the trespass of its independent contractor.

¶ 10 The trial court granted partial summary judgment to PFS on the trespass claim. The court found, based on the declaration of another PFS employee and the documentation PFS provided, that "[PFS] did not exercise control over how, when, or where" Interstate Recovery repossessed the vehicle and that Interstate Recovery was an independent contractor. The court also noted that the Rands had not produced controverting evidence.

¶ 11 PFS next moved for summary judgment on its counterclaim for a deficiency judgment. The Rands argued that, in calculating their Early Termination Liability, PFS did not deduct the appropriate amount as the Realized Value, which they asserted was the wholesale value as determined by an independent appraisal. The Rands provided a printout from edmunds.com, an online appraiser, as evidence of the actual trade-in value of a vehicle of the same year and make as the repossessed vehicle.

¶ 12 The court granted PFS summary judgment on its counterclaim in the amount of $49,044.38. The court found that the Rands did not dispute their failure to make monthly payments, and that such failure amounted to a default, which allowed for the early termination of the agreement. The court also found that nothing in the written agreement supported the Rands' contention that they were not in default because of their alleged ongoing efforts to negotiate "either a trade-in of the vehicle or an early termination buy-out." The court then discussed the method in the agreement by which another appraisal would be made to ascertain the "Realized Value" of the vehicle, but that "[t]here [was] no evidence that the 'Edmunds.com' information was derived and provided pursuant to the agreement." The court therefore concluded that PFS was entitled to judgment as a matter of law on its claim for a deficiency judgment.

¶ 13 The Rands then filed a motion for leave to file a supplemental pleading, asserting that material facts had occurred since the complaint had been filed, specifically the sale of the vehicle. PFS objected and filed a request for attorneys' fees pursuant to the contract and Arizona Revised Statutes ("A.R.S.") section 12–341.01(A) (2003) in the amount of $31,862.00 and costs.

¶ 14 The court denied the Rands' motion for leave to file a supplemental pleading and entered formal judgment on August 30, 2006, granting summary judgment on all claims to PFS, plus its attorneys' fees in the amount of $31,862.00 and costs in the amount of $342.00. The Rands timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## STANDARD OF REVIEW

¶ 15 Summary judgment may be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). In reviewing a motion for summary judgment, we determine *de novo* whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson,* 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). We review the decision on the record made in the trial court. *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken,* 179 Ariz. 289, 292, 877 P.2d 1345, 1348 (App. 1994). We view the facts and the inferences drawn from those facts in the light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction,* 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

## DISCUSSION

### 42 U.S.C. § 1983

■ ¶ 16 The Rands first argue that their civil rights claims under 42 U.S.C. § 1983 ought not have been dismissed by summary judgment. The Rands contend that PFS's self-help repossession violated their constitutional right to due process and that the involvement of the Glendale Police Department converted the repossession from a private act to a state act.

■ ¶ 17 Federal law controls the adjudication of claims brought pursuant to 42 U.S.C. § 1983. *Baker v. Rolnick,* 210 Ariz. 321, 325, ¶ 18, 110 P.3d 1284, 1288 (App. 2005). Because a person violates § 1983 by depriving another of a constitutional right under color of state law, that section excludes from its purview purely private conduct.

*Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835 (9th Cir.1999). Furthermore, although only a "government actor" can be liable under § 1983, *id.,* a private person who engages in such prohibited conduct jointly with a government official acts under color of state law for the purposes of the statute. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Of course, the mere acquiescence by a government official in the private party's conduct does not convert such private action into state action. *United States v. Coleman,* 628 F.2d 961, 963–64 (6th Cir.1980).

■ ¶ 18 In the context of a private self-help repossession, the presence of a police officer can convert private action to state action, depending on the degree of involvement of the officer. For example, the mere presence of police at the scene of a self-help repossession to keep the peace, when the officer provides no assistance to the repossessor, does not amount to state action. *Barrett v. Harwood,* 189 F.3d 297, 302, (2d Cir.1999). But,

> [w]hen an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action.

*Id.* Accordingly, state action might exist where an officer arrives at the scene with the repossessor, giving the impression that law enforcement supported the action and intimidating the property owner from exercising his or her right to resist the repossession. *Booker v. City of Atlanta,* 776 F.2d 272, 274 (11th Cir.1985) (finding fact question precluding summary judgment). State action could also exist when an officer present at the scene of a repossession advises the owners of the vehicle to allow the vehicle to be taken and threatens them with arrest if they continue to resist. *Marcus v. McCollum,* 394 F.3d 813, 821–22 (10th Cir.2004) (finding fact question precluding summary judgment). Also, state action has been found when police accompany a landlord in serving an eviction

notice and then advise the tenants that their utilities would be disconnected, that the eviction procedures were proper, that they should leave the premises, and later are present when the utilities are disconnected. *Howerton v. Gabica*, 708 F.2d 380, 381–85 (9th Cir.1983). In each case, the degree of state involvement is fact sensitive and dependent on all the relevant circumstances. *Marcus*, 394 F.3d at 819.

¶ 19 The Rands assert that, in Arizona, the mere presence of a police officer at the scene of a repossession converts the private conduct to state action. They rely on *Walker v. Walthall*, 121 Ariz. 121, 588 P.2d 863 (App. 1978). In *Walker*, this court held that a police officer's presence at the repossession of a vehicle constituted state action for purposes of Arizona's self-help repossession statute, now A.R.S. § 47–9609 (2005), triggering the due process notice and hearing requirements of the Fourteenth Amendment to the United States Constitution. *Id.* at 123–24, 588 P.2d at 865–66. In that case, we stated:

> [T]he introduction of law enforcement officers into the area of self-help repossession, regardless of their degree of participation or non-participation in the actual events, would constitute state action, thereby invalidating a repossession without a proper notice and hearing.

*Id.* at 124, 588 P.2d at 866. However, although we employed broad language in finding state action from the presence of an officer, the facts in *Walker* involved more than mere presence. In *Walker*, the officer, in full uniform, accompanied the repossessor to the residence of the debtor and together they obtained the debtor's consent to the repossession. *Id.* at 122, 588 P.2d at 864. The debtor testified that he did not intend to give up his vehicle but, because of the presence of the officer, he relinquished possession. *Id.* at 123, 588 P.2d at 865. These facts make *Walker* consistent with the above-referenced federal cases discussing state action for purposes of § 1983. *See Barrett*, 189 F.3d at 302; *Booker*, 776 F.2d at 274.

¶ 20 In considering the instant case, we find that summary judgment was not properly granted because a question of fact exists as to the conduct of the Glendale police pres-

ent at the repossession. The trial court found that the Rands had provided "no admissible evidence" to support a claim that PFS and Interstate Recovery acted jointly with the Glendale police. However, it is the party moving for summary judgment, in this case PFS, that bears the burden of making a prima facie case in support of its motion. *Villas at Hidden Lakes Condos. Ass'n v. Geupel Constr. Co.*, 174 Ariz. 72, 81, 847 P.2d 117, 126 (App.1992). Absent a showing that the moving party is entitled to summary judgment, the party opposing the motion need not even respond, and the failure to respond cannot in itself entitle the moving party to summary judgment. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 196, 805 P.2d 1012, 1017 (App.1990). *Cf. Maxwell v. Fidelity Fin. Srvs., Inc.*, 184 Ariz. 82, 85–86, 907 P.2d 51, 54–55 (1995) (opponent to summary judgment need not file affidavits but can reference other facts on file to comply with rule); *Mohave Elec. Coop. v. Byers*, 189 Ariz. 292, 301, 942 P.2d 451, 460 (App.1997) (court may consider facts alleged in verified complaint in determining whether summary judgment should be granted).

¶ 21 Here, the record included no description of the actions of the Glendale police at the repossession. In the statement of facts accompanying its motion for summary judgment, PFS stated, "[a]t some point during the recovery, the Glendale Police Department became involved." In asserting that fact, PFS relied on the Rands' complaint as support. The Rands' complaint had alleged that when the Rands protested the repossession, "the Glendale Police Department was summoned to the residence to intervene," that "[t]he Glendale Police Department permitted the repossession company to 'take the vehicle' on behalf of [PFS], over [the Rands'] protest," and that PFS "relied upon the leverage of force provided by the Glendale Police Department." We view the facts in the light most favorable to the Rands. *Prince*, 185 Ariz. at 45, 912 P.2d at 49. Having acknowledged the involvement of the Glendale Police Department, PFS would be entitled to summary judgment for lack of state action only if the police involvement was unarguably benign. But, because the Glendale Police Department "permit-

ted"[1] the repossession company to take control of the Rands' vehicle, its action arguably provided the requisite level of active state participation. For summary judgment purposes, PFS provided no evidence to the contrary. On this record, PFS was therefore not entitled to summary judgment.

**Trespass**

■ ¶ 22 The Rands next argue that the trial court erred in granting summary judgment to PFS on their claim for trespass. The court found that PFS was not liable for any trespass committed by Interstate Recovery because the repossession company was an independent contractor. The Rands argue that Interstate Recovery was not an independent contractor and that even if it were, PFS is nevertheless liable for Interstate Recovery's actions under the "nondelegable duty exception." On that latter point, we agree.

■ ¶ 23 "The general rule is that while an employer is liable for the negligence of its employee under the doctrine of *respondeat superior*, an employer is not liable for the negligence of an independent contractor." *Wiggs v. City of Phoenix*, 198 Ariz. 367, 369, ¶ 7, 10 P.3d 625, 627 (2000). An agent is an independent contractor, rather than an employee, if the employer or principal exercises no control over and has no right to exercise control over how the agent performs its service. *Id.* at 370, ¶ 10, 10 P.3d at 628 (employer instructs independent contractor "on what to do, but not how to do it"); *Bible v. First Nat'l Bank of Rawlins*, 21 Ariz.App. 54, 56–57, 515 P.2d 351, 353–54 (1973) (repossession company was independent contractor where "how, when, who, and where" of the repossession were left to the discretion of the repossession company).

¶ 24 The Rands assert that the evidence is uncontroverted that PFS reserved control over the "how, when, who, and where" of the repossession, and left no discretion to Interstate Recovery as to how it conducted the repossession. That argument, however, is not supported by the record.

¶ 25 The Rands base their argument on a declaration by Jim Ray, an employee of PFS, that PFS "engaged Interstate Recovery, an automobile repossession company, to enter Mr. Rand's premises and take the 2003 Porsche automobile pursuant to the agreement." But the mere fact that PFS hired Interstate Recovery to take those steps necessary to repossess Neil Rand's vehicle does not establish that it had control over how the repossession was to be performed.

¶ 26 In its motion for partial summary judgment, PFS relied on the same declaration of Jim Ray in which he declared that Interstate Recovery performed services as an independent contractor and that PFS exercised no control over the actual performance of its services. It also provided a copy of its controlling agreement with Interstate Recovery, dated May 1997, which established the parties' agreement that Interstate Recovery was engaged as an independent contractor. PFS also submitted a copy of its transmittal form to Interstate Recovery requesting assistance in recovering the Rand vehicle and providing Neil Rand's name, home and work addresses and telephone numbers, and vehicle information. The document included no instructions as to how, when, or where to recover the vehicle; the only instructions were a request that Interstate Recovery take pictures of the vehicle after recovery and forward those pictures to PFS, together with a condition report. The Rands did not provide any controverting evidence. Given the record before it, the trial court correctly ruled that Interstate Recovery acted as an independent contractor.

■ ¶ 27 The Rands go on to argue, however, that even if Interstate Recovery were an independent contractor, PFS ought to be held liable for Interstate Recovery's trespass under the nondelegable duty exception to the general rule that principals are not liable for the acts of their independent contractors.

■ ¶ 28 The nondelegable duty exception has been held to apply under narrow

---

1. One definition of "permit" is "to make possible." *The New Oxford American Dictionary* 1267

(2d ed.2005).

circumstances. For example, a principal may be held liable when the work to be performed is inherently dangerous. *See Bible,* 21 Ariz.App. at 57, 515 P.2d at 354 (explaining a two-prong test where the work involved creates a risk of harm that cannot be eliminated with the exercise of reasonable care and that the risk of harm must be to the person). In other instances, a principal may have a nondelegable duty imposed by statute, contract, or the common law, with regard to a particular class of persons. *Ft. Lowell–NSS Ltd. P'ship v. Kelly,* 166 Ariz. 96, 101–05, 800 P.2d 962, 967–71 (1990) (holding that Restatement (Second) of Torts § 422(b) imposes liability on a possessor of land for injuries that occur to an invitee while he is in possession and result from his independent contractor's negligence). We must consider, then, whether the nondelegable duty exception applies here.

¶ 29 Arizona's self-help repossession statute is part of our Uniform Commercial Code. A.R.S. § 47–9609. It provides that, after default, a secured party may take possession of the collateral "without judicial process, if it proceeds without breach of the peace." *Id.* The Rands argue that the obligation to proceed without breach of the peace is nondelegable. In support, they rely upon *MBank El Paso, N.A. v. Sanchez,* 836 S.W.2d 151 (Tex. 1992).[2]

¶ 30 In *MBank,* the Texas Supreme Court considered whether the duty to avoid breaching the peace imposed by Texas's self-help repossession statute was nondelegable, such that a creditor could be held liable for a breach of the peace caused by its independent contractor. *Id.* at 151–52. The court, over a dissent, held that it was. *Id.* at 154–55

¶ 31 Like A.R.S. § 47–9609, the relevant Texas statute in *MBank* authorized a creditor to take possession of collateral upon default without judicial process "if this can be done without breach of the peace." *Id.* at 152 (citing Tex. Bus & Comm.Code § 9–503). The court noted that the purpose of imposing such an obligation was based on the public policy of avoiding the use of force or violence. *Id.* at 152–53. The court held that the obligation was non-delegable based on Section 424 of the Restatement (Second) of Torts § 424 (1965) ("Restatement").[3] That section provides:

> One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor[4] employed by him to provide such safeguards or precautions.

*see also Clark v. Assocs. Commercial Corp.,* 877 F.Supp. 1439, 1447 (D.Kan.1994) (citing *Hester v. Bandy,* 627 So.2d 833, 842 (Miss. 1993)) ("[The creditor] cannot set in motion causes dangerous to the person or property of others without taking all reasonable precautions to anticipate, obviate, and prevent their probable consequences."). The court reasoned that the Texas legislature had indicated that the Texas Uniform Commercial Code, of which the repossession statute was a part, should be construed to effect uniformity with other jurisdictions and that other jurisdictions had found the obligation to avoid breaching the peace to be nondelegable. *MBank,* 836 S.W.2d at 154; *see also Gen. Fin. Corp. v. Smith,* 505 So.2d 1045, 1048 (Ala.1987) (stating that secured creditor could not "delegate to [independent contractor] its liability for the wrongful manner in which the repossession was accomplished"); *Massengill v. Ind. Nat'l Bank,* 550 N.E.2d 97, 99 (Ind.Ct.App.1990) (finding that "[state] case and statutory law make it clear that repossession of a secured chattel must be accomplished without breaching the peace"); *Robinson v. Citicorp Nat'l Serv., Inc.,* 921

---

**2.** Arizona has previously rejected the argument that the act of repossessing vehicles pursuant to the self-help repossession statute is nondelegable because it is inherently dangerous. *Bible,* 21 Ariz.App. at 57–58, 515 P.2d at 354–55. The Rands, however, argue nondelegability on a different ground.

**3.** In the absence of contrary authority, Arizona courts look to the Restatement for guidance. *Campbell v. Westdahl,* 148 Ariz. 432, 436, 715 P.2d 288, 292 (App.1985).

**4.** PFS has not argued that "contractor" as used here does not refer to an independent contractor.

S.W.2d 52, 54–55 (Mo.Ct.App.1996) ("[A] secured party may not delegate to third persons, including independent contractors, the secured party's duty to repossess in a peaceable manner."); *DeMary v. Rieker*, 302 N.J.Super. 208, 695 A.2d 294, 301 (Ct.App. Div.1997) (adopting the rule "that an employer has a non-delegable duty to effectuate a repossession without a breach of the peace, as strongly in the public interest"). The court further opined that the interest of the creditor in obtaining the collateral must be balanced against society's interest in public peace and that if a creditor found that obligation too burdensome it could resort to the courts rather than attempt self-help repossession. *MBank*, 836 S.W.2d at 154.

¶ 32 In response, PFS argues, as did the dissent in *MBank*, that the repossession statute does not impose the "specified safeguards or precautions" to which Restatement § 424 refers, but provides only general guidelines. PFS asserts that in *Griffith v. Valley of the Sun Recovery & Adjustment Bureau, Inc.*, 126 Ariz. 227, 613 P.2d 1283 (App.1980), this court already considered and rejected the proposition that Arizona's repossession statute imposes such "specified safeguards or precautions." *Griffith*, however, is not controlling here.

¶ 33 In *Griffith*, we considered whether a breach of the peace under the predecessor statute to A.R.S. § 47–9609 constituted negligence per se. *Id.* at 228–29, 613 P.2d at 1284–85. We noted that negligence per se applied when "a specific requirement of a law or an ordinance" was violated, when a statute proscribed "certain or specific acts," or when a law provided that "a certain thing must or must not be done." *Id.* at 229, 613 P.2d at 1285. We went on to conclude that the self-help repossession statute did not provide such a level of specificity but instead simply authorized repossession if it could be accomplished without breach of the peace. *Id.* That conclusion, however, held only that the statute did not proscribe such specific acts that the failure to comply would be deemed to be negligence per se. *Id.* at 229, 613 P.2d at 1285. Instead, "each individual case must be evaluated to determine if a breach of the peace has occurred." *Id.* at 229, 613 P.2d at 1285.

¶ 34 Restatement § 424, however, applies not to specific acts, but to "specified safeguards or precautions for the safety of others." Although A.R.S. § 47–9609 does not identify specific acts to be done or not to be done during a repossession, it does impose the specific safeguard that a creditor not breach the peace if that creditor elects to forgo judicial process when repossessing collateral. *See Nixon v. Halpin*, 620 So.2d 796, 797–98 (Fl.Dist.Ct.App.1993) ("secured party has a non-delegable duty to take possession of its collateral without a breach of the peace"); *Sammons v. Broward Bank*, 599 So.2d 1018, 1020 (Fla.Dist.Ct.App.1992) ("The duty to repossess property in a peaceable manner is specifically imposed on a 'secured party' by the uniform commercial code and is intended to protect debtors and other persons affected by repossession activities."); *Nichols v. Metropolitan Bank*, 435 N.W.2d 637, 640 (Minn.Ct.App.1989) (same); *Robinson*, 921 S.W.2d at 54 (same); *Mauro v. Gen. Motors Acceptance Corp.*, 164 Misc.2d 871, 626 N.Y.S.2d 374, 376–77 (N.Y.Sup.Ct. 1995) (same, quoting *Nichols*). *See also Gen. Finance Corp.*, 505 So.2d at 1048 (noting legislature did not set out safeguards or precautions with specificity, but finding by implication that secured party has "duty to take those precautions ... necessary at the time to avoid a breach of the peace").

¶ 35 We are, of course, mindful that A.R.S. § 47–1102 requires that we interpret Arizona's U.C.C. liberally and apply it to promote its underlying purposes, one of which is to "make uniform the law among the various jurisdictions." A.R.S. § 47–1102(A), (B)(3) (2005). In this regard, our review of the relevant decisions indicates that most jurisdictions that have considered this issue have concluded that the U.C.C. statute authorizing self-help repossession imposes a nondelegable duty to avoid breaching the peace. *See Gen. Finance*, 505 So.2d at 1048; *Sammons*, 599 So.2d at 1020–21; *Massengill*, 550 N.E.2d at 99; *Nichols*, 435 N.W.2d at 640–41; *Robinson*, 921 S.W.2d at 54–55; *DeMary*, 695 A.2d at 301; *Mauro*, 626 N.Y.S.2d at 377; *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862, ¶ 16 (Okla.1998). *But see*

434

*Jiggetts v. Lancaster*, 138 N.C.App. 546, 531 S.E.2d 851, 853 (2000) (rejecting argument that duty to repossess peacefully is nondelegable, finding that public policy does not require it and that repossessing automobiles is not inherently dangerous).

 ¶ 36 For those reasons, we hold that the nondelegable duty exception applies to independent contractors hired to accomplish the self-help repossession of a motor vehicle. Accordingly, we conclude that although Interstate Recovery was an independent contractor, PFS remains liable for its trespass, if any, because it had a nondelegable duty to repossess its collateral only if it could do so without breaching the peace.[5]

## DEFICIENCY JUDGMENT

 ¶ 37 The Rands next argue that the trial court erred in granting summary judgment to PFS on its counterclaim for the deficiency balance. The Rands contend that they were entitled to have their Early Termination Liability reduced by the Realized Value of the Vehicle, which they assert is the wholesale or trade-in value of the vehicle and not the amount that resulted through a private sale.[6] The interpretation of a contract is a question of law, which we review *de novo*. *Callan v. Bernini*, 213 Ariz. 257, 259, ¶ 9, 141 P.3d 737, 739 (App.2006).

¶ 38 The lease agreement provides that in calculating the Early Termination Liability, PFS was to subtract the Realized Value of the Vehicle, which the lease defines as "the net amount, if any Lessor receives from the sale of the Vehicle, sold at wholesale in a commercially reasonable manner." In the event the lessee disagrees with the Realized Value of the Vehicle, the lessee has the option of obtaining a professional appraisal, from an independent third party, of the wholesale value of the vehicle that could be realized at sale. The lessee must exercise this option within fourteen days of receiving notice of the Early Termination Liability and must use an appraiser acceptable to PFS.

 ¶ 39 The Rands assert that PFS was required to use the appraised value as the Realized Value in calculating their Early Termination Liability. They provided a document from edmunds.com, an internet appraisal service, for that purpose. However, the Rands provided no evidence that they obtained PFS's agreement to use edmunds.com as the independent appraiser as required by the lease or that they obtained the appraisal within fourteen days of receiving notice of their Early Termination Liability.[7] Consequently, PFS's use of the amount obtained through the sale of the vehicle in calculating the Early Termination Liability was in accordance with the terms of the lease.[8] We therefore affirm the trial court's decision granting summary judgment on PFS's deficiency claim.

5. This court has held that Restatement § 424 does not apply in other circumstances, such as to impose a nondelegable duty upon a property owner who has contracted with an independent contractor. *Sullins v. Third & Catalina Constr. P'ship*, 124 Ariz. 114, 117, 602 P.2d 495, 498 (App.1979). Today we narrowly extend the application of Restatement § 424 to independent contractors hired to repossess motor vehicles, as empowered by A.R.S. § 47–9609.

6. The Rands also assert that they were not in default, but were current in their payments in July 2004 when they sought to exercise their option to terminate the lease, disagreed with the pay-off amount, and filed a prior lawsuit against PFS and the Porsche dealership for fraud. However, that complaint was subsequently dismissed with prejudice, which dismissal was affirmed on appeal. *See Rand v. Unitedauto Group, Inc.*, 1 CA–CV 05–0608 (Ariz.App. July 11, 2006) (mem.decision). Because they have admitted that they ceased making monthly payments from

the time they filed the lawsuit, whether they exercised their option to terminate early or whether PFS terminated the agreement for default does not affect the analysis given their undisputed failure to make the required payments.

7. The printout of the internet web page appears to be dated February 7, 2004. The notice of the deficiency, including the amount obtained from the sale of the vehicle, was dated March 24, 2005.

8. The Rands argue that the sale of the vehicle at a private sale was part of a scheme to undersell the vehicle to a dealership and defraud them of the deficiency amount. The Rands, however, did not raise this argument in the trial court and so have waived it on appeal. *See Scottsdale Princess P'ship v. Maricopa County*, 185 Ariz. 368, 378, 916 P.2d 1084, 1094 (App.1995) (appellate court will not consider on appeal arguments not first presented to the trial court).

## SUPPLEMENTAL PLEADING

¶ 40 The Rands also argue that the trial court erred in denying their request to file a supplemental pleading. Whether to permit a party to file a supplemental pleading is within the discretion of the trial court. Ariz. R. Civ. P. 15(d).

¶ 41 The court did not abuse its discretion. The Rands argued below that the notice of sale of the vehicle and the sale of the vehicle occurred after the complaint had been filed and that they should have been permitted to plead these facts. The Rands, however, did not make their request until after all claims before the court had been decided against them by summary judgment. Moreover, the facts of the sale and the notice of sale were already part of the record before the court when the Rands made their request. We therefore affirm the trial court's ruling.

### ATTORNEYS' FEES

¶ 42 The Rands last argue that the trial court abused its discretion in awarding PFS its attorneys' fees and request that we vacate or reduce that award. PFS sought an award of fees pursuant to the lease and A.R.S. § 12–341.01 (2003). The lease provides for an award of reasonable fees from the lessee to PFS if PFS hires an attorney "to collect what you owe," and the court will enforce a contractual provision for attorneys' fees according to its terms. *First Fed. Sav. & Loan Ass'n v. Ram*, 135 Ariz. 178, 181, 659 P.2d 1323, 1326 (App.1982). Because we affirm the court's ruling on the counterclaim for a deficiency judgment, an award of those fees related to that issue is appropriate.

¶ 43 However, because we reverse the trial court's rulings with respect to the trespass claim and 42 U.S.C. § 1983 claim, the award of fees related to those claims must be vacated. But, because the trial court's judgment does not distinguish between the fees awarded PFS in prosecuting its counterclaim and those awarded for defending against the Rands' claims, we vacate the award of attorneys' fees and remand with instructions to the trial court to enter an award of reasonable fees in favor of PFS in accordance with the lease for the prosecution of its counterclaim only. The trial court may reconsider an award of fees related to the Rands' claims upon resolution of the case.

### CONCLUSION

¶ 44 We reverse the trial court's grant of summary judgment on the Rands' 42 U.S.C. § 1983 claim and their trespass claim. We affirm the trial court's grant of summary judgment on PFS's counterclaim for a deficiency. Finally, we remand this case for further proceedings consistent with this opinion.

CONCURRING: DONN KESSLER, Presiding Judge and ANN A. SCOTT TIMMER, Judge.