NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JOHN COVINGTON, *Plaintiff/Appellee*,

*v.*

SARAH NEUMANN, *Defendant/Appellant*.

No. 1 CA-CV 24-0096

---

FILED 11-12-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2020-005168
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Maynard Cronin Erickson & Curran, P.L.C., Phoenix
By Daniel D. Maynard, Michael D. Curran
*Counsel for Plaintiff/Appellee*

Katz & Bloom, Phoenix
By Norman M. Katz, Jay R. Bloom
*Counsel for Defendant/Appellant*

_____

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

_____

**H O W E**, Judge:

**¶1**         Sarah Neumann ("Neumann") appeals from several minute entries and orders that (1) appointed an appraiser to value a home she owns with John Covington ("Covington"), (2) required the parties to accept the appraiser's valuation, (3) gave Covington the right to buy out Neumann's interest based on that valuation, but (4) denied her motion to order the sale of the home. For the following reasons, we vacate the superior court's orders appointing an appraiser, requiring the parties' acceptance of the appraisal, and granting Covington the right to buy out Neumann's interest, but we affirm the denial of her motion to order the sale of the home.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**         In 2010, Covington bought a home in Phoenix. Covington, an industrial designer, photographer, and musician, renovated the home and constructed a studio in the home's garage. Covington and Neumann began dating in 2018. After Neumann began spending a significant amount of time living with Covington, Covington discussed selling her a 50% interest in the home. In December 2018, Covington hired an appraiser, who valued the home at $630,000. Covington then consulted with Neumann and drafted a co-ownership agreement (the "Agreement"), which the parties signed on March 13, 2019. Under the Agreement, Covington retained $315,000 in equity, and Neumann assumed the remaining mortgage, $217,800, leaving her with $97,200 in equity. Neumann paid Covington $74,950 for this equity interest, and Covington lent Neumann $21,600 at 3% interest to pay for the remainder. Neumann and Covington also agreed to each contribute $30,000 to a home renovation budget.

**¶3**         As part of the Agreement, the parties contemplated how to divide the property if their relationship ended. Specifically, the Agreement included an "Exit" clause that provided:

If we split, we establish Independent Agreed Appraised price of home. We can either sell and split proceeds 50/50 and Sarah is responsible to pay off balance of Mortgage, or John can buy out Sarah paying the difference between 50% of the appraised value and balance on the mortgage to retain ownership.

¶4 In early 2020, the parties' relationship ended. Covington obtained a new appraisal in March 2020, which valued the home at $510,000, but Neumann did not agree to the appraisal or to establish an "Independent Agreed Appraised price" ("IAAP") based on its valuation.

¶5 In April 2020, Covington filed a complaint in part seeking declaratory judgment that he may buy Neumann's interest in the home for $27,725 under the Agreement. Neumann denied Covington's declaratory claim in her answer and asserted several counterclaims unrelated to the home.

¶6 Neumann moved for summary judgment on Covington's declaratory judgment claim, arguing that the parties never reached an IAAP. In her motion, Neumann also asked the court to declare that the parties must sell the home. The court found that the Agreement is "clear and unambiguous concerning what will occur in the event the parties terminate their relationship;" that is, they first needed to establish an Independent Agreed Appraised price of the home which had not been done. The court granted Neumann summary judgment because it found she had never agreed to Covington's March 2020 appraisal on which he based his $27,725 buyout.

¶7 The court, however, denied her motion to require sale of the home because it found the Agreement did not impose a deadline to establish an IAAP and therefore an IAAP could still be established. The court instead ordered the parties to confer on obtaining an IAAP and, if the parties could not agree, the court would appoint a Real Estate Commissioner. Because the parties could not agree on a method for obtaining an IAAP, the court appointed a commissioner. In 2022 during this litigation, Neumann obtained her own appraisal of the home's value as of March 11, 2020, and then currently as of March 25, 2022, estimated at $525,000 and $680,000 respectively. In a motion, Covington averred that he would agree to the March 11, 2020, valuation.

¶8 After continued litigation, Covington moved to clarify the date of the valuation, arguing the IAAP should be retrospective to 2020

because he continued to pay the home's mortgage, taxes, and insurance in the intervening three years since the parties' separation. In a September 2023 minute entry, the court granted the motion and clarified that the IAAP should be determined retrospectively between February 19, 2020, and March, 11, 2020. In so ordering, the court reasoned that "[n]othing in the Agreement supports a conclusion that the appraised price of the home would be premised upon the value of the home over three years after the parties split." The court gave Covington five days upon receipt of the appraisal to decide if he would buy out Neumann's interest or agree to sell the home. If he elected to buy out Neumann's interest, Covington would then have 21 calendar days to post a bond with the Maricopa County Clerk of Court. If Covington failed to timely post the bond, the court would deem Covington to have elected to sell the home.

¶9        Covington received the appraisal on October 25, 2023, and elected to buy out Neumann's interest on October 27, 2023, thus requiring him to post bond by November 17, 2023. On November 9, 2023, Covington moved to not post bond because he had asserted claims again Neumann that he wished to offset against the amount he would owe her. Alternatively, Covington asked to place the funds in his lawyer's trust account. On November 28, 2023, the court denied Covington's motion, treating it as a motion for reconsideration and not one to extend time. Because Covington had not posted bond, the court ordered the parties to sell the home. Covington then moved to extend time for posting bond, which the court granted, finding good cause and excusable neglect. The court entered judgment on the above orders pursuant to Arizona Rule of Civil Procedure 54(b). Neumann timely appealed, and we have jurisdiction. A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶10        On appeal, Neumann argues the court erred by (1) appointing a commissioner to determine an IAAP, (2) granting Covington the option to elect between buying out Neumann's interest or selling the home; (3) ordering the IAAP be determined retrospectively to February/March 2020, and (4) extending Covington's deadline to post bond. Neumann further argues that because the parties did not agree to an IAAP, the court erred by not ordering the home be sold. Covington does not cross-appeal the court's grant of summary judgment to Neumann on his declaratory relief claim asserting the right to buy out Neumann's interest for $27,725. Rather, he asserts the court did not err in its subsequent orders because the court properly interpreted the contract.

¶11　　　　We review the superior court's interpretation of a contract de novo. *See Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 434 ¶ 37 (App. 2007) (noting contract interpretation is a question of law). In interpreting a contract, courts "seek to discover and effectuate the parties' expressed intent." *Terrell v. Torres*, 248 Ariz. 47, 49 ¶ 14 (2020). We construe the contract's language according to its plain, ordinary meaning, attempting "to reconcile and give effect to all terms of the contract to avoid any term being rendered superfluous." *Id.* at 50 ¶ 14. We interpret a contract in its entirety, seeking to effectuate the parties' intent as to all terms. *Id.* at 49–50 ¶ 14.

## I.　Commissioner Appointment.

¶12　　　　Neumann argues the court rewrote the Agreement and added terms not found in the contract. She contends the contract did not give Covington the option to choose between buying out her interest or selling the home but rather required both parties to agree to the IAAP. In response, Covington argues the court may fill in missing but implied terms in a contract. He argues at the same time, however, that the exit provision is unambiguous. He further argues that the Agreement gave him the election between the two exit options because he originally owned the home solely and the Agreement did not give Neumann the option to buy his interest.

### A.　"Agreed Appraised price."

¶13　　　　The Agreement does not give a court authority to order the parties to reach an IAAP or to appoint a commissioner. The language of the exit provision is simple. The Agreement states, "[i]f we split, we establish Independent Agreed Appraised price of home." The Agreement then states that "[w]e can either sell and split proceeds 50/50 and Sarah is responsible to pay off balance of Mortgage, or John can buy out Sarah paying the difference between 50% of the appraised value and balance on the mortgage to retain ownership."

¶14　　　　The court interpreted the first sentence of the exit provision as a precondition to buying out or selling the home, i.e., that the Agreement requires the parties to obtain an appraisal and use the valuation of that appraisal as the buyout price. But the Agreement states only that the parties shall establish an "Independent *Agreed* Appraised *price*" of the home. (Emphasis added.) Thus, the Agreement contemplates the parties' agreement to a *price*. The Agreement does not state that the parties shall appoint an independent appraiser or agree to be bound by the valuation of such an appraiser. Had the parties wished to be bound by the valuation of

an independent appraiser, even if they did not agree with the appraiser's valuation, the parties could have so structured the Agreement. In other words, the issue is not whether the commissioner's appraisal was "independent," but rather whether the price obtained by its valuation was "agreed."

¶15 By the Agreement's plain language, an objected-to appraisal does not qualify as an IAAP because the valuation is not "agreed." "Independent Agreed Appraised price" consists of three adjectives and one noun. Each of those adjectives modifies the noun "price." Thus, by using the language, "agreed," the parties demonstrated their intent to be bound only by an appraised price they both "agreed" to. The court itself found that "[t]he agreed upon price must be agreed upon by both parties. Covington does not get to unilaterally establish the price." By the same reasoning, because any "Agreed Appraised price" requires both parties' consent, the court lacked power to order Neumann to accept the commissioner's valuation over her objection.

B.      Covington's Buyout Right.

¶16 Neumann argues that the court wrongly permitted Covington to buyout Neumann based on a price she did not agree to. Covington responds that the parties always contemplated his having the option to buy out Neumann because the home is his place of work and that the lack of an IAAP is due to Neumann's bad faith.

¶17 The Agreement does not give Covington the unilateral right to choose between buying out Neumann's interest or selling the home. Under the Agreement, both parties are equal 50% co-owners of the home. The Agreement provides the parties with two options for disentangling their financial interest in the home: (1) "We can either sell . . . or [(2)] John can buy out Sarah." Consistent with the parties' equal ownership shares, the Agreement evinces the parties' intent to jointly decide the exit option by beginning the exit provision with "we." Likewise, by using "or," the Agreement places the two exit options as equal. Covington asserts that he "can decide which option to apply," but at his deposition he conceded that the Agreement does not state "how one option would be chosen over the other." Although Covington argues he always intended to have the option to buy out Neumann because the home was his place of work, he also argues the Agreement is unambiguous. "When the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not . . . add something to the contract which the parties have not put there." *Employers Mut. Cas. Co. v. DGG & CAR, Inc.*,

218 Ariz. 262, 267 ¶ 24 (2008) (cleaned up). The Agreement lacks any language discussing either Covington's motivations behind the buyout option or how the parties would choose between the two exit options. By its plain language and read as a whole, the Agreement presumes the parties will jointly decide which exit option to choose.

¶18      The Agreement's implicit requirement that the parties sell the home when the parties cannot agree on an IAAP further disclaims Covington's right to buy out Neumann's interest. Even if the Agreement requires the parties to first attempt in good faith to reach an IAAP, the price must still be "agreed." Thus, the Agreement preconditions Covington's buyout option by first requiring the parties to reach an IAAP. By contrast, the Agreement places no preconditions on a sale of the home. Covington asserts that Neumann acted in bad faith by not agreeing to her own retrospective March 11, 2020 appraisal. But the court never found that Neumann acted in bad faith, and we do not reweigh the evidence on appeal. *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284 ¶ 20 (App. 2019). Because the condition precedent to the buyout option never occurred, Covington cannot buy out Neumann's interest.

¶19      Finally, the overall structure of the Agreement reflects the parties' intent to sell the home if they could not reach an IAAP. Covington and Neumann own equal interests in the home. Those interests are worth what the market is willing to pay for them. As discussed, by using "or," the Agreement considers a buyout and sale as equal options. Because the parties own equal interests, both options should return equal equity/compensation to the parties. But if a buyout would result in a windfall for one party because the appraisal does not properly reflect the market price, then a buyout would effectively grant greater equity/interest to one party than to the other. Because the parties did not intend for the end of their relationship to result in a financial windfall to one party, the Agreement does not provide Covington a unilateral right to elect the buyout option.

## II.    Sale of Home.

¶20      Because the parties could not reach an agreement on a buyout price, Neumann argues the court should have ordered the parties to sell the home. The court, however, properly denied Neumann's motion to order the sale of the home because she did not properly raise a claim for declaratory relief in the litigation.

**¶21**        In his declaratory claim, Covington sought only that the court grant him the right to buy out Neumann's interest for $27,725. Determining whether Covington had that right did not require the court to order the sale of the home. Instead, whether the Agreement requires the sale of the home is itself a separate claim for relief. In her answer, Neumann did not seek a declaration ordering the parties to sell the home. Rather, she first moved for the court to order its sale in her motion for summary judgment. Neumann's motion raises a compulsory counterclaim because her claim also arises out of the Agreement and does not require adding another party. *See* Ariz. R. Civ. P. 13(a); Ariz. R. Civ. P. 57 (applying the rules of civil procedure in declaratory judgment actions). Because a compulsory counterclaim must be raised in the pleadings, Neumann did not properly raise her counterclaim in her summary judgment motion. Ariz. R. Civ. P. 13(a).

**¶22**        Because the court should not have ordered the appointment of a commissioner or granted Covington the power to elect to buy out Neumann's interest, we do not reach the other issues Neumann raises on appeal.

## III.    Attorney's Fees.

**¶23**        Neumann requests her attorney's fees on appeal under A.R.S. § 12-341.01 and her costs under A.R.S. § 12-341. Neumann is the successful party on balance in this appeal. Because this appeal is a "contested action arising out of a contract," we award Neumann her reasonable attorney's fees under A.R.S. § 12-341.01. We also award Neumann her reasonable costs upon compliance with ARCAP 21.

**CONCLUSION**

¶**24**      We affirm the court's denial of Neumann's motion to order the sale of the home. But we vacate the court's orders appointing a commissioner, requiring the parties to accept the commissioner's appraised price, and granting Covington the option to elect to buy out Neumann's interest. Because this decision affects neither the court's grant of summary judgment to Neumann on Covington's declaratory relief claim nor the other claims and counterclaims raised by Covington and Neumann in this litigation, we remand for proceedings consistent with this decision.

