515 P.2d 351

**Paul BIBLE, Individually and Paul Bible and Marian A. Bible, husband and wife, Appellants,**

v.

**FIRST NATIONAL BANK OF RAWLINS, a national banking association; and First National Bank of Arizona, a national banking association, Appellees.**

**No. 1 CA–CIV 1938.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 1, 1973.

Rehearing Denied Dec. 5, 1973.

Review Denied Jan. 8, 1974.

Simon & Jekel, Louis G. Jekel, Jr., Scottsdale, for appellants.

Streich, Lang, Weeks, Cardon & French, by Dan M. Durrant, Phoenix, for appellees.

## OPINION

JACOBSON, Chief Judge, Division 1.

The sole issue presented on this appeal is whether a disputed material issue of fact existed which would have precluded the trial court from rendering summary judgment.

Taking the facts presented to the trial court in the light most favorable to the party opposing the motion for summary judgment (appellant) it appears that on December 30, 1968, appellants-counter-plaintiffs, Paul Bible and Marian A. Bible,

purchased a Chevrolet pickup truck in Rawlins, Wyoming. The purchase was financed through appellee, First National Bank of Rawlins, which secured the repayment by a lien on the pickup truck.

In September, 1969, the Bibles became delinquent in their debt obligation and the First National Bank of Rawlins contacted appellee First National Bank of Arizona requesting aid in protecting its secured interest in the vehicle. On July 15, 1970, a representative of First National Bank of Arizona contacted Mr. Bible concerning the delinquency. As a result of this contact, First National Bank of Arizona employed Auto Recovery Bureau to repossess the pickup truck.

Auto Recovery Bureau is owned and operated by Arthur and Eileen Senerchia. They are compensated for their services in repossessing automobiles on an individual job basis, the normal fee being either $40 or $50. All equipment necessary to perform their services is supplied by the repossessor, the bank does not have a term contract utilizing their services (each job being separate employment) and the manner in which Senerichas perform their services is left entirely to their own discretion. In particular, First National Bank of Arizona did not give any instructions concerning nor exercise any control over the performance of the repossession of the Bible vehicle. Auto Recovery Bureau has been in the business of repossessing automobiles for approximately 13 years. During this period of time they have performed approximately 9,000 repossessions which resulted in only two incidents where violence was threatened. No employee of Auto Recovery Bureau or any owner of a repossessed vehicle has ever been injured.

At approximately 3 a. m. on July 16, 1970, employees of Auto Recovery Bureau arrived at the Bible home to effect the repossession of the pickup truck. During the course of this repossession the Bibles were awakened and as a result of their attempt to halt the repossession, one of the repossessing team allegedly shouted an obscenity

at Mrs. Bible. The shouting and hearing of this obscenity formed the basis of the appellants' counter-claim to the bank's action on its promissory note and their third party claim against Auto Recovery Bureau. Appellants were awarded judgment by default against Auto Recovery Bureau, but lost on the banks' motion for summary judgment as to their counter-claim. This appeal followed.

The issues framed in the trial court by the motion for summary judgment and the response thereto were:

(1) Was Auto Recovery Bureau an independent contractor or a servant of the bank?

(2) If Auto Recovery Bureau was an independent contractor, is the business of repossessing automobiles so inherently dangerous as to impose liability upon its employer regardless of its status?

These and only these issues were argued in the trial court by appellants as giving rise to disputed issues of fact which would preclude the granting of summary judgment. We point this out, for on appeal appellants raise the issue that a factual dispute exists as to an alleged waiver by the bank of its right to repossess the vehicle in question and the negligence of the bank in hiring an incompetent and financially irresponsible repossession agency (we note that any evidence as to the financial status of Auto Recovery Bureau is completely lacking in the record on this appeal). In addition, for the first time on appeal, appellants urge that the right to repossess automobiles is by statute (ARS § 44–3149) made a non-delegable duty so as to not relieve the banks from liability for acts performed in their behalf.

■ We decline to consider these additional issues on appeal and do so for two reasons. First, in responding to a motion for summary judgment it is the duty of counsel to bring to the attention of the trial court those portions of the record (in the absence of controverting affidavits) which will support his position that a dis-

puted issue of material fact exists and the court is under no obligation to search the myriad pages of depositional testimony to find any disputed material fact issue which counsel has overlooked. Choisser v. State ex rel. Herman, 12 Ariz.App. 259, 469 P.2d 493 (1970); Pitzen's Wig Villa v. Pruitt, 11 Ariz.App. 332, 464 P.2d 652 (1970). Second, issues not presented to the trial court will not be considered for the first time on appeal. National Car Rental v. Fox, 18 Ariz.App. 160, 500 P.2d 1148 (1972). For both of these salutary reasons, the court declines to consider these additional issues.

■ Both parties agree that any legal liability that may be imposed on the banks by reason of the harm inflicted by Auto Recovery Bureau, rests in the first instance on whether Auto Recovery Bureau is the servant of the banks or an independent contractor. Appellants concede that if Auto Recovery Bureau is an independent contractor, normally no liability would be imposed on the banks as principals for harm resulting from unauthorized tortious conduct of the independent contractor even though committed while acting within the scope of its employment. Restatement of Agency, Comment § 2(b); Consolidated Motors, Inc. v. Ketcham, 49 Ariz. 295, 66 P.2d 246 (1937). While Restatement of Agency and the courts have attempted to list various criteria by which to test the relationship involved, "the ultimate fact which these evidentiary facts are merely intended to assist the jury or court in determining, is whether the alleged servant is subject to the other's control or right to control in the manner in which he reaches the desired result." Consolidated Motors, Inc. v. Ketcham, *supra*; also *see*, German v. Mountain States Tel. & Tel. Co., 11 Ariz.App. 91, 462 P.2d 108 (1969).

■ If control or right to control the agent is reserved in the principal, a master-servant relationship is created which subjects the master to liability for the servant's torts. Conversely, if no control or right to control the action of the agent

is vested in the principal, the agent is classified as an independent contractor, and ordinarily no liability flows from his acts to the principal.

■ We have tested the relationship between the banks and Auto Recovery Bureau by all the accepted criteria and conclude, as did the trial court, that there is no factual dispute that the bank did not exercise nor did it have the right to exercise any control over Auto Recovery Bureau in the manner in which it repossessed automobiles. The banks simply employed Auto Recovery Bureau to do a job of work —repossess the vehicle. The how, when, who, and where of that repossession were left entirely to the discretion of Auto Recovery Bureau. Under the facts presented to the trial court, it could reach no other conclusion but that Auto Recovery Bureau was an independent contractor and thus its torts committed while engaged in the repossession would not subject the banks to liability.

Appellants argue, however, that even if Auto Recovery Bureau was an independent contractor, the act of repossessing automobiles is such an inherently dangerous occupation that the banks cannot delegate this act to a third party and thereby escape liability. This exception to the general rule of non-liability of a principal for the negligent acts of an independent contractor has been aptly stated in Restatement, Second, Torts § 427:[1]

> "One who employs an independent contractor to do work involving *a special danger to others* which the employer knows or has reason to know *to be inherent in or normal to the work*, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger." (Emphasis added.)

■ This exception comes into play, however, only when the work involved meets two established prerequisites:

(1) The work itself must be of a character that it involves a risk of harm which cannot be eliminated by the exercise of reasonable care; and,

(2) The risk of harm must be to the person, land or chattel of persons other than the actor. *See* S. A. Gerrard Co., Inc. v. Fricker, 42 Ariz. 503, 27 P.2d 678 (1933); E. L. Jones Construction Co. v. Noland, 105 Ariz. 446, 466 P.2d 740 (1970).

■ Whether a "special danger to others inherent in or normal to the work" is present must of necessity be determined by the facts of each case. E. L. Jones Construction Co. v. Noland, *supra*. Appellants point to two facts in this case which they contend show the inherently dangerous aspects of repossessing automobiles—the fact that the operation is normally conducted in the early morning hours and the fact that on occasion the repossessors carry guns. However, a reading of the depositional testimony in this case is clear that these two precautions are taken not because the occupation of repossessing automobiles is dangerous to others, but because there may be a danger *to the repossessors* from irate owners who do not want their vehicles taken. The repossessions are normally conducted in the early morning hours to avoid confrontation with the owner and thus avoid the possibility that the repossessors will be hurt. The wearing of the gun is not to shoot owners of the repossessed vehicles, but to discourage would-be assailant owners from harming the repossessors.

We do not mean to intimate that the carrying of a dangerous weapon may not have potential danger to others. However, this potential danger is not *inherent* in the business of repossessing so as to bring this occupation within the first prerequisite noted. The evidence shows that in the more than 9,000 repossessions performed by Auto Recovery Bureau, only two occa-

---

1. No other section of Restatement of Torts has been cited to this court as being applicable to the facts of this case.

sions of violence occurred, both being directed toward the persons doing the repossessing. On one occasion an irate owner took a shot at the repossessor and in the other, the owner hurled a pitchfork at the repossessor.

From the facts in this case there is simply no evidence that the act of repossessing an automobile involves a special danger to others so as to bring into play the exception to the non-liability rule of a principal for the acts of an independent contractor.

Based upon the facts and issues presented to the trial court, we are of the opinion that the trial court correctly granted the banks' motion for summary judgment on appellants' counterclaim.

Judgment affirmed.

EUBANK, P. J., and HAIRE, J., concur.