66 P.3d 771

**ARIZONA JOINT VENTURE, an Arizona partnership, and North Scottsdale Joint Venture, an Arizona partnership, Plaintiffs–Appellants,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant–Appellee.**

No. 1 CA–TX–02–0010.

Court of Appeals of Arizona, Division 1, Department T.

Dec. 17, 2002.

As Amended Feb. 24, 2003.

Daniel T. Garrett LLC By Daniel T. Garrett, Mesa, Attorneys for Plaintiffs–Appellants.

Janet Napolitano, Attorney General By Sara D. Branscum, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

TIMMER, Presiding Judge.

¶ 1 The Arizona Department of Revenue ("ADOR") audited the records of Arizona Joint Venture and North Scottsdale Joint Venture ("taxpayers") pertaining to their prime contracting transaction privilege tax liability for the periods September 1993 through July 1997 and December 1994 through August 1997, respectively ("the audit period"). ADOR accepted the taxpayers' protests to the initial audit assessments and adjusted them accordingly, at the same time reducing certain land-value deductions that its initial audit had left undisturbed. The taxpayers disagreed with these adjustments. They exhausted their administrative remedies and brought this appeal action in the tax court. The tax court sustained ADOR's final audit assessments. The taxpayers now appeal. They urge these issues:

1. Whether ADOR lacked statutory authority to adjust the taxpayers' land-value deductions;

2. Whether ADOR's land-value deduction adjustments constituted invalid deficiency assessments because they were made without using the proper ADOR form and were barred by the statutory limitations period established by Arizona Revised Statutes ("A.R.S.") sections 42–1104(A) (1999 & Supp.2002) and 42–1108(A) (1999);

3. Whether ADOR's prior conduct estopped it from reducing the taxpayers' land-value deductions or to require the taxpayers to substantiate them; and

4. Whether the tax court should have required ADOR to prove that the taxpayers' land-value deductions were overstated.

We have jurisdiction pursuant to A.R.S. §§ 12–2101(B) (1994) and 42–1254(D)(5) (Supp.2002).

## FACTS AND PROCEDURE BELOW

¶ 2 At all times material to this case the taxpayers were controlled by the same management group. Both engaged in the business of prime contracting in Arizona by building condominium developments and selling condominiums for residential use. They were therefore subject to the transaction privilege tax on that business imposed by A.R.S. §§ 42–5008(A) (1999 & Supp.2002) and 42–5075 (1999 & Supp.2002) (formerly A.R.S. §§ 42–1309 and 42–1310.16, respectively).

¶ 3 The tax base under the prime contracting classification is sixty-five percent of the taxpayer's gross proceeds of sales or gross income from the business less specified deductions, including "[t]he sales price of land, which shall not exceed the fair market value." A.R.S. § 42–5075(B)(1). From January 1982 through July 1997 appellant Arizona Joint Venture has consistently claimed land-value deductions of thirty percent of gross proceeds of sales. In three earlier audits of Arizona Joint Venture, ADOR either accepted or refrained from challenging its thirty

percent land-value deductions. During the audit period now at issue, both taxpayers computed their land-value deductions at thirty percent of gross proceeds of sales.

¶4 The taxpayers each hired other contractors to construct streets, curbs, sidewalks, and utility lines for their condominium developments. The taxpayers certified to these contractors in writing that the taxpayers were the prime contractors who were liable for transaction privilege taxes on the jobs in question. *See* A.R.S. § 42–5075(E).

¶5 ADOR audited the taxpayers. It determined initially that the contractors whom the taxpayers had engaged to build streets, curbs, sidewalks, and utility lines had themselves been acting as prime contractors and had thus been liable for taxation on the amounts that the taxpayers had paid them. ADOR found that the taxpayers had been mistaken in giving exemption certificates to these contractors, and that under A.R.S. § 42–5075(E), the taxpayers were liable as a matter of law for the taxes that the contractors otherwise would have paid.

¶6 ADOR's auditor also believed that the thirty percent land-value deductions that the taxpayers claimed were greater than fair market value and unsubstantiated. The auditor requested documentation to support the amounts claimed. The taxpayers supplied none. The ADOR audit manager and audit supervisor nevertheless ultimately determined that the thirty percent land-value deductions were acceptable.

¶7 In February 1999, ADOR issued deficiency assessment notices to the taxpayers under A.R.S. § 42–1108(A). These assessments were based strictly on ADOR's finding that the taxpayers were liable under A.R.S. § 42–5075(E) for the prime contracting taxes that their outside contractors would have paid but for the exemption certificates that the taxpayers gave them. No part of the assessments was based on any failure of the taxpayers to properly report or pay tax on their own gross proceeds of sales from prime contracting, or on any overstatement of deductions or credits.

¶8 The taxpayers protested the assessments. The taxpayers explained to ADOR:

On-site contracting is contracting performed on the land that is being sold to the buyer. Off-site contracting is contracting performed on land that is not being sold to the buyer. Off-site contracting typically comprises streets, curbs, sidewalks and utilities. These are typically not sold to the purchaser but are deeded to a municipality or other governmental entity.

Off-site contracting may also comprise common area parks, pools, or other structures transferred to a home owners' association. These common areas are usually not sold to the purchaser but are deeded to the home owners' association.

However, here, everything is sold to the purchasers. The entire project is on-site! Even the streets, curbs, sidewalks and utilities are sold to the individual purchasers of the condominiums. There is no off-site contracting. All land and the construction thereon is sold to the buyers of the condominiums. To do otherwise would violate the Declaration of Condominium and State law.

Letter of May 11, 1999.

¶9 After an informal conference at which taxpayer North Scottsdale Joint Venture provided additional information, ADOR issued an amended proposed assessment that significantly reduced the additional tax amount determined to be due from it. ADOR nevertheless rejected the legal position set forth in the taxpayers' letter of May 11, 1999. The taxpayers requested a formal hearing.

¶10 On April 27, 2000, ADOR asked the taxpayers to provide information concerning their purchases of the lands at issue. ADOR explained that this information would assist it in evaluating the correctness of the taxpayers' thirty percent land-value deductions. On June 13, 2000, North Scottsdale Joint Venture provided ADOR with a Buyers Closing Statement for its land purchase. The record contains no evidence that Arizona Joint Venture provided any similar documentation.

¶11 On June 5, 2000, ADOR informed the taxpayers' counsel in writing that it was now accepting the taxpayers' contention that they

had acted as prime contractors with respect to all construction on the condominium development sites with which the audit was concerned, including construction of the "off-site" improvements by the taxpayers' outside contractors. ADOR's letter also explained that its original assessments had been calculated on the assumption that the taxpayers' land deductions of thirty percent of gross proceeds of sales were "determined by the value of developed land sold to the condominium owners." Because ADOR was now accepting the taxpayers' theory concerning the nature of their business activities during the audit period, ADOR informed the taxpayers that it had recalculated their tax liabilities for the audit period to conform with their legal position and to "properly determine the amount of tax deficiency...." ADOR stated:

These calculations include removing the amounts that were considered "off-site" and allowing a proper land deduction. Because Taxpayers were the prime contractors for the development of the common areas, the land deduction should equal the sales price of the undeveloped land. A.R.S. § 42–1310.16(B)(1). Because Taxpayers have not provided any documentation as to the sales price of the undeveloped land, the Division has calculated the land deduction at the standard 20% of the sales price of the condominiums.

... [U]nder A.R.S. § 42–2059(B), the Division is prohibited from increasing originally assessed amounts in subsequent amendments. Therefore, Taxpayers' tax liabilities remain at the original assessed amounts.

¶ 12 A formal hearing on the taxpayers' protests was conducted on October 5, 2000, before a hearing officer with the Office of Administrative Hearings. The hearing officer issued a decision upholding ADOR's assessments and denying the taxpayers' protests. The taxpayers filed separate complaints/notices of appeal in the tax court. *See* A.R.S. § 42–1254(C); Ariz. Admin. Code ("A.A.C.") R15–10–131(A) and R15–10–132(A).

¶ 13 The tax court consolidated the two actions. On cross-motions for summary judgment, the tax court ruled for ADOR.

From formal judgment, the taxpayers timely appealed.

## STANDARD OF REVIEW

■ ¶ 14 On an appeal from summary judgment in which the material facts are not in dispute, the appellate court is to determine de novo whether the trial court correctly applied the substantive law to those facts. *Brink Elec. Constr. Co. v. Arizona Dep't of Revenue*, 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995).

## ANALYSIS

### 1. Estoppel Against ADOR

¶ 15 Before ADOR and the tax court, the taxpayers contended that ADOR's prior acceptance of or failure to challenge taxpayer Arizona Joint Venture's thirty percent land-value deductions on three earlier audits, together with the taxpayers' "reliance" thereon, operated to estop ADOR from either reducing their deductions to twenty percent or requiring them to substantiate deductions of thirty percent. Both the hearing officer and the tax court rejected that contention.

■ ¶ 16 The taxpayers now contend this was error. We disagree. The doctrine of equitable estoppel may be asserted against state taxing authorities only if four required elements are established. *Valencia Energy Co. v. Arizona Dep't of Revenue*, 191 Ariz. 565, 576–77, ¶¶ 35–38, 959 P.2d 1256, 1267–68 (1998). First, a representative of ADOR with authority to act in the area under consideration must have engaged in affirmative acts inconsistent with the later position that the affected taxpayer seeks to preclude ADOR from asserting. *See id.* at 576–77, ¶¶ 35, 36, 959 P.2d at 1267–68. ADOR's action must "bear some considerable degree of formalism under the circumstances." *Id.* at 577, ¶ 36, 959 P.2d at 1268.

■ ¶ 17 Second, the affected taxpayer must actually have relied on ADOR's action, and this reliance must have been reasonable under the circumstances. *See id.* at 576, 577, ¶¶ 35, 37, 959 P.2d at 1267–68. Reasonable reliance requires that the party seeking estoppel have provided the state with correct

information and "neither knew nor was put on notice that the state's position was erroneous." *Id.* at 577, ¶ 37, 959 P.2d at 1268.

¶ 18 Third, ADOR's prior action must have caused the affected taxpayer to change its position in a way not compelled by law and to sustain substantial detriment upon ADOR's later repudiation of its action. *See id.* at 576, 577, ¶¶ 35, 38, 959 P.2d at 1267–68. Finally, the proposed application of equitable estoppel against ADOR must not unduly damage the public interest or substantially and adversely affect the exercise of governmental powers. *Id.* at 578, ¶ 40, 959 P.2d at 1269.

■ ¶ 19 In this case the record fails to establish three of the four required elements for estoppel against the state in a taxing matter. The taxpayers failed to demonstrate that the circumstances of the three prior audits under which ADOR accepted or failed to contest their thirty percent land-value deduction claims were factually and legally similar to those in this case, because it failed to supply sufficient details concerning those circumstances. Accordingly, the taxpayers were unable to show that ADOR's conduct in those cases was truly "inconsistent" with its rejection of the thirty percent deductions here.

¶ 20 The taxpayers knew or should have known that their land-value deductions would necessarily be reduced if the lands were not valued as property improved with streets, curbs, sidewalks, utility lines, and common areas. Whether their lands were to be valued as improved or not depended on whether the improvements were properly characterized as "off-site" or "on-site." The taxpayers believed that the streets, curbs, sidewalks, utility lines, and common areas that their outside contractors built during the audit period were "on-site" and that ADOR had erred in concluding that they were "off-site." Accordingly, because the taxpayers knew or should have known that ADOR's allegedly "inconsistent" initial acquiescence in their thirty percent land-value deductions was based on ADOR's mistake, any reliance on that conduct was not reasonable within *Valencia Energy. See* 191 Ariz. at 577, ¶ 37, 959 P.2d at 1268.

■ ¶ 21 Additionally, the taxpayers fail to establish that they suffered the required "substantial detriment" from ADOR's alleged change of position. The taxpayers have not challenged the substantive correctness of ADOR's amended assessments for the audit period—only ADOR's legal authority to issue them. Requiring a taxpayer to pay "taxes legitimately owed under the correct interpretation of the law" does not qualify as a legal detriment on which a claim of estoppel against the taxing authority may be founded. *Valencia Energy,* 191 Ariz. at 577, ¶ 38, 959 P.2d at 1268.

¶ 22 Finally, contrary to the taxpayers' argument, ADOR did not deny the taxpayers an opportunity to provide evidence to support their claimed thirty percent land-value deductions. ADOR requested such evidence as early as April 27, 2000, thereby giving the taxpayers ample opportunity to come forward with proof. Moreover, contrary to the taxpayers' assertion, ADOR's auditor did not testify before the hearing officer that if the taxpayers hired an appraiser or provided other documentation at that point concerning land value during the audit period, he would reject it. The auditor actually testified:

VIVIAN CHANG: Um, if the taxpayers were to give you an appraisal now, after the fact, would it be acceptable?

DENNIS CROFT: No, there's no way you can get an appraisal today. I mean, you're talking about land that was purchased back in 1993. There's no way you could come up with an appropriate appraisal that's done seven years after the fact.

VIVIAN CHANG: Okay, but they did not give you an appraisal back then either.

DENNIS CROFT: No.

The tax court did not err in rejecting the taxpayers' bid to estop ADOR from reducing the taxpayers' land-value deductions to twenty percent or requiring them to substantiate deductions of thirty percent.

## 2. Legality of Land–Value Deduction Changes

### A. ADOR's Statutory Authority to Adjust Proposed Assessment

¶ 23 The taxpayers argue that once ADOR had issued its original proposed assessments,

it lost authority to adjust those assessments by recalculating the taxpayers' land-value deductions. The taxpayers reason that by adjusting the assessments, ADOR effectively re-audited the taxpayers and made new deficiency assessments against them beyond the four-year limitations period provided by A.R.S. §§ 42–1104(A) and 42–1108(A) and (B). They also contend that ADOR thereby violated A.R.S. § 42–2059(B) (1999) by increasing its proposed assessments against the taxpayers after having given them formal notice of them. We disagree on both counts.

¶ 24 The defect in the taxpayers' analysis under A.R.S. §§ 42–1104(A) and 42–1108(A) and (B) lies in their assertion that ADOR's letter of June 5, 2000, constituted a new notice of deficiency determination against them. The taxpayers' descriptions of ADOR's action in their opening brief imply that the land-value deductions issue was wholly unrelated to the taxpayers' protests, and that ADOR arbitrarily resurrected that issue for the purpose of revisiting it against the background of the same facts on which it originally accepted the taxpayers' thirty percent deduction claims. This is plainly not what occurred.

¶ 25 ADOR's acquiescence in the taxpayers' legal position on the on-site/off-site issue necessarily called into question the accuracy of their land-value deductions over the audit period. By asking the taxpayers for documentation concerning those deductions, and recalculating them after receiving no response, ADOR merely completed the assessment adjustment process that the taxpayers triggered by filing their protests.

■ ¶ 26 Contrary to the taxpayers' analysis, A.R.S. § 42–2059 confirms rather than denies ADOR's authority to do so. In prohibiting additional audits for a particular period once a deficiency has been "completely determined," [1] A.R.S. § 42–2059(A) implies that additional audit assessment adjustments may be issued at any time before that point. Further, the focused prohibition in A.R.S.

§ 42–2059(B) against increasing the "amount" of a proposed assessment [2] strongly implies that such an assessment may otherwise be adjusted in any way that does not increase its total amount.

¶ 27 We cannot agree with the taxpayers that § 42–2059 would allow such adjustments only upon a completely new audit and assessment. The taxpayers' analysis ignores the ultimate goal of the audit and protest process: "to determine the correct amount of tax." A.R.S. § 42–1108(A). Interpreting § 42–2059(B) to impose a blanket legislative freeze on ADOR's initial proposed assessments would necessarily prohibit ADOR from even reducing a proposed assessment based on post-assessment information that the taxpayer itself has submitted. If the legislature had intended through § 42–2059(B) to prohibit all adjustments to an initial proposed assessment, we conclude that it would have expressed this in clear, unmistakable language. The language that it actually used does not support the taxpayers' interpretation.

¶ 28 The tax court did not err in rejecting the taxpayers' claim that ADOR's amended assessments for the audit period were beyond its legal authority and barred by the statute of limitations. [3]

### B. Burden of Proof in Tax Court for Land–Value Deduction

¶ 29 Citing *Arizona State Tax Comm'n v. Kieckhefer*, 67 Ariz. 102, 105, 191 P.2d 729, 731 (1948) and A.R.S. § 42–1254(D)(4), the taxpayers lastly contend that ADOR's initial acceptance of their thirty percent land-value deductions was presumed correct and that ADOR should have borne the burden to prove that it was not. We disagree.

■ ¶ 30 *Kieckhefer* holds that an assessment of additional taxes is presumed correct, but does not state or imply anything about the burden of proof in such a case. 67 Ariz. at 105, 191 P.2d at 731. Section 42–

---

**1.** Subject to limited exceptions listed in A.R.S. § 42–2059(A)(1) through (4).

**2.** Except for limited exceptions listed in A.R.S. § 42–2059(B)(1) through (4).

**3.** Because we reject the taxpayers' underlying contention that the amended assessments were in reality new audit assessments, we need not address the effect of ADOR's alleged failure to use the proper ADOR form to give notice of them.

1254(D)(4) shifts the burden of proof on an issue of fact to ADOR only if the taxpayer has asserted a reasonable dispute on that issue, has maintained all required records, and has fully cooperated with ADOR, including producing all information and documents that ADOR has reasonably requested. Here the taxpayers asserted no dispute at all concerning the amount of their permissible land-value deductions during the audit period. They merely contended that ADOR was legally barred from changing its original approval of those deductions. The burden of proof on that issue accordingly remained with the taxpayers.

## CONCLUSION

¶ 31 The tax court correctly determined that the taxpayers failed to establish an estoppel against ADOR, that ADOR did not exceed its statutory authority in adjusting the taxpayers' land-value deductions, and that the four-year limitation provided by A.R.S. § 42–1108(A) and (B) did not bar ADOR's adjustment of those deductions. Because the taxpayers do not prevail, we deny their request for attorney's fees under A.R.S. § 12–348(B) (Supp.2002).

¶ 32 Accordingly, the judgment is affirmed.

CONCURRING: CECIL B. PATTERSON, JR., and G. MURRAY SNOW, JJ.