212 P.3d 29

**PRIDE OF SAN JUAN, INC.,
a California corporation,
Plaintiff/Appellee,**

v.

**Loren PRATT d/b/a Loren Pratt Farms,
Defendant/Appellant.**

**No. 1 CA–CV 07–0820.**

Court of Appeals of Arizona,
Division 1, Department E.

Jan. 29, 2009.

---

18. Although C & W moved to strike Hackett's affidavit, the trial court denied that motion.

Clark & Associates By A. James Clark, Yuma, Attorneys for Plaintiff/Appellee.

Jennings Strouss & Salmon, PLC By Michael J. O'Connor and John J. Egbert, Phoenix, Attorneys for Defendant/Appellant.

## OPINION

NORRIS, Judge.

¶ 1 The issue in this appeal is whether the application of pesticides from an airplane— "crop dusting"—is still an inherently dangerous activity in light of technological advances after this issue was first addressed by our supreme court in 1933. We hold, under the facts of this case, that crop dusting is still an inherently dangerous activity.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Loren Pratt, doing business as Loren Pratt Farms ("Pratt"), planted a 15–acre field of broccoli in Wellton, Arizona, in 2003. On an adjacent field, Pride of San Juan, Inc. ("San Juan"), owned mixed vegetable crops. Pratt hired a licensed pest control advisor, Sunland Chemical Company, Inc. ("Sunland"), as an independent contractor to inspect Pratt's broccoli crop and to recommend pesticides. The pesticides Sunland recommended for use on Pratt's broccoli field were not registered with the federal government for use on San Juan's vegetable crops. Sunland arranged for an aerial pesticide application company, Tri–Rotor AG Services, Inc. ("Tri–Rotor"), to crop dust Pratt's broccoli field. Tri–Rotor dusted Pratt's field with the recommended pesticides in December 2003 and January 2004. San Juan subsequently discovered the pesticides aerially applied to Pratt's field had contaminated its crops and rendered them unmarketable.

¶ 3 The Arizona Department of Agriculture ("ADA") confirmed the contamination of San Juan's crops and concluded Tri–Rotor's pilot had violated Arizona Administrative Code ("A.A.C.") R3–3–301(D), which provides: "[a] person shall not allow drift that causes any unreasonable adverse effect." The ADA issued a criminal citation to the pilot as a result.

¶ 4 San Juan sued Pratt, Sunland and Tri–Rotor for negligence. San Juan alleged Pratt was liable for its own negligence and vicariously liable for Tri–Rotor's negligence in applying the pesticides. By stipulation, the court dismissed San Juan's claims against Sunland with prejudice and entered a $450,000 judgment against Tri–Rotor.

¶ 5 Pratt moved for summary judgment on San Juan's claim that Pratt was vicariously liable for Tri–Rotor's negligence. Pratt argued it was not liable for Tri–Rotor's negli-

gence because, due to technological advances in the aerial application of pesticides, crop dusting was no longer an inherently dangerous activity. Accordingly, Pratt asserted the superior court was not required by *S.A. Gerrard Co., Inc. v. Fricker,* 42 Ariz. 503, 27 P.2d 678 (1933), to find that the crop dusting performed by Tri–Rotor was an inherently dangerous activity. In *S.A. Gerrard,* our supreme court held that because of the "very great likelihood of the poisonous dust or spray spreading to adjoining" property, a landowner was vicariously liable for the negligence of its independent contractor-crop duster. *Id.* at 507, 27 P.2d at 680. Viewing *S.A. Gerrard* as controlling under the principle of *stare decisis,* the superior court held that crop dusting was inherently dangerous as a matter of law and denied Pratt's motion for summary judgment.

¶ 6 San Juan then moved for entry of judgment against Pratt on the basis of the court's application of *S.A. Gerrard* and the parties' stipulation that only Tri–Rotor was at fault for San Juan's damages and Pratt's liability, if any, was based on its vicarious liability for Tri–Rotor's fault under *S.A. Gerrard.* Pratt did not object to San Juan's motion, although it reserved its appeal right. Essentially treating San Juan's motion as one for summary judgment, the superior court entered judgment for San Juan, ruling as a matter of law that Pratt was vicariously liable for Tri–Rotor's fault under the "binding precedent" of *S.A. Gerrard.*

¶ 7 Pratt timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) and —2101(B) (2003).

## DISCUSSION[1]

¶ 8 In Arizona, an employer is not ordinarily liable for the negligent acts of its independent contractors. *Ft. Lowell–NSS Ltd. P'ship v. Kelly,* 166 Ariz. 96, 101, 800

P.2d 962, 967 (1990); *E.L. Jones Constr. Co. v. Noland,* 105 Ariz. 446, 454, 466 P.2d 740, 748 (1970); *Miller v. Westcor Ltd. P'ship,* 171 Ariz. 387, 390–91, 831 P.2d 386, 389–90 (App.1991). The reason for this rule is that because an employer lacks control over an independent contractor's work, the independent contractor is the "proper party to be charged with the responsibility of preventing the risk, administering it, and distributing it." *Ft. Lowell,* 166 Ariz. at 100, 800 P.2d at 966 (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 71, at 509 (5th Ed.1984)).

¶ 9 There are several exceptions to this general rule, however. *Id.* at 101, 800 P.2d at 967 ("[M]any exceptions to the rule of nonliability have now been recognized so that even where the employer has not been personally negligent, he may be vicariously liable for the contractor's negligence."). One such exception is when an independent contractor is hired to perform an "inherently dangerous" activity. *See Miller,* 171 Ariz. at 391, 831 P.2d at 390; *Bible v. First Nat'l Bank of Rawlins,* 21 Ariz.App. 54, 57, 515 P.2d 351, 354 (1973); Restatement (Second) of Torts § 427 (1965). Our supreme court applied this exception in *S.A. Gerrard.* 42 Ariz. at 507, 27 P.2d at 680.

¶ 10 *S.A. Gerrard* involved an independent contractor-crop duster who negligently allowed pesticides to fall on and damage a neighbor's property. *Id.* at 505, 27 P.2d at 679. In addressing the defendant-employer's liability for the independent contractor-crop duster's negligence, the court first explained the general rule in Arizona that an employer is not ordinarily liable for the negligence of its independent contractors. *Id.* at 506, 27 P.2d at 680. Then, the court explained the exception to this rule for "inherently dangerous" activities:

One ... exception[ ] is that the law will not allow one who has a piece of work to be

1. Because the court essentially treated San Juan's motion for entry of judgment as a motion for summary judgment, on appeal, we review de novo the court's grant of summary judgment, viewing the evidence in the light most favorable to Pratt as the non-prevailing party. *Strojnik v. Gen. Ins. Co. of Am.,* 201 Ariz. 430, 433, ¶ 10, 36

P.3d 1200, 1203 (App.2001). When the material facts are not in dispute, which is the case here, we determine de novo whether the superior court correctly applied the substantive law to those facts. *Ariz. Joint Venture v. Ariz. Dep't of Revenue,* 205 Ariz. 50, 53, ¶ 14, 66 P.3d 771, 774 (2002).

done that is necessarily or inherently dangerous to escape liability to persons or property negligently injured in its performance by another to whom he has contracted such work. This is especially true where the agency or means employed to do the work, if not confined and carefully guarded, is liable to invade adjacent property, or the property of others, and destroy or damage it.

*Id.* at 507, 27 P.2d at 680. Applying this exception to the particular facts before it, the court held: "because of the very great likelihood of the poisonous dust or spray spreading to adjoining or nearby premises and damaging or destroying valuable property thereon, [the employer] could not delegate this work to an independent contractor and thus avoid liability." *Id.*

¶ 11 Arizona courts have subsequently cited *S.A. Gerrard* with approval for the proposition that employers can be vicariously liable for the negligence of independent contractors hired to perform inherently dangerous activities. *See Miller*, 171 Ariz. at 391, 831 P.2d at 390; *Bible*, 21 Ariz.App. at 57, 515 P.2d at 354. An activity is considered inherently dangerous based on two factors: (1) if the risk of harm cannot be eliminated through the exercise of reasonable care; and (2) if the risk is to the person, land or chattels of another. *Ft. Lowell*, 166 Ariz. at 105, 800 P.2d at 971; *Miller*, 171 Ariz. at 391, 831 P.2d at 390; *Bible*, 21 Ariz.App. at 57, 515 P.2d at 354. Further, for an activity to be inherently dangerous under this test, "[i]f the risk can be recognized in advance, it is sufficient if the risk of harm is either inherent in its nature, or is a risk normally expected in doing the task." *Miller*, 171 Ariz. at 391, 831 P.2d at 390 (citing Restatement (Second) of Torts § 427 cmt. b).

¶ 12 Pratt focuses his argument on the first factor in this test and asserts that because of technological advances in the aerial application of pesticides since 1933, when *S.A. Gerrard* was decided, the risks of harm from crop dusting can now be eliminated

through reasonable care. Pointing to several specific technological advances in crop dusting—including improved spray nozzles, new computer-controlled release systems, use of GPS navigation systems and inclusion of "thickening agents" in the spraying solutions—Pratt argues, as he did in the superior court, "aerial applications performed in 2004 are vastly different from the 1931 crop dusting at issue in *S.A. Gerrard,* and thus the trial court was not bound by the determination of inherent dangerousness in *S.A. Gerrard.*"

¶ 13 To a limited extent, we agree with Pratt. The court in *S.A. Gerrard* did not hold that crop dusting should be considered an inherently dangerous activity in perpetuity, regardless of the facts presented. As our supreme court and this court have repeatedly recognized, whether an activity is inherently dangerous depends on the facts of each case. *See, e.g., Ft. Lowell*, 166 Ariz. at 105, 800 P.2d at 971 ("We do not deal with labels, but only facts. Electrical work may or may not be inherently dangerous, depending on the type of work involved or the circumstances."); *E.L. Jones*, 105 Ariz. at 456, 466 P.2d at 750 ("The question is dependent on the facts of each case[.]" (quoting 57 C.J.S. *Master and Servant* § 590(b) (1948))); *Miller*, 171 Ariz. at 391, 831 P.2d at 390 ("The determination rests upon the facts of each case."); *Bible*, 21 Ariz.App. at 57, 515 P.2d at 354 ("Whether a special danger to others inherent in or normal to the work is present must of necessity be determined by the facts of each case." (internal quotations omitted)).[2] Indeed, the court in *S.A. Gerrard* noted that *"the facts* bring the case" within the exception to the general rule of employer non-liability. 42 Ariz. at 507, 27 P.2d at 680 (emphasis added). Because the determination of inherent dangerousness is based on the particular facts of each case, the issue before us is whether the facts presented to the superior court regarding the aerial application of pesticides in 2004 still reflect,

---

**2.** We note it is possible for advances in technology to alter an activity so as to deprive it of its inherent dangers. *See, e.g., Lewis v. Steele,* 52 Mont. 300, 157 P. 575, 577 (1916) ("an automobile can no longer be deemed inherently danger-

ous"); *Little v. McGraw,* 250 Ark. 766, 467 S.W.2d 163, 165 (1971) ("Aviation is now so commonplace that it cannot be considered to be either inherently dangerous or ultrahazardous.").

as the court in *S.A. Gerrard* put it, the "very great likelihood of the poisonous dust or spray spreading to adjoining or nearby premises." *Id.*[3]

¶ 14 Upon review of the record, the facts of this case reflect crop dusting remains an inherently dangerous activity.[4] We therefore affirm the superior court's entry of judgment in favor of San Juan.[5]

¶ 15 In its motion for summary judgment, Pratt included an affidavit from an expert with extensive experience in agricultural chemical applications. His declarations are plain: crop dusting is substantially safer as a result of modern technology and expertise. But his declarations do not support Pratt's assertion that the risks inherent in crop dusting can be *eliminated* with reasonable care. Even according to Pratt's expert, inherent dangers still exist. Specifically, the expert stated:

11. Modern aerial applicators have extensive training and use the latest technology *to reduce the potential of drift* of their load....

. . . .

13. Over the past decade, computer-controlled release systems have been developed that allow for variable and customized drop size *to mitigate drift potential.*

14. Modern aerial application allows *the risk of drift to be managed* through the proper application of training and technique.

15. A pilot operating today (or in 2004) has the ability to safely make aerial applications *with no or minimal drift or overspray.*

(Emphasis added.) Although the dangers associated with crop dusting may be less severe than they were at the time *S.A. Gerrard* was decided, based on Pratt's expert's statements, they still exist and cannot be *eliminated* through reasonable care.

¶ 16 Pratt also relied on deposition testimony from an agricultural consultant hired as an expert for San Juan. This expert noted certain advances in technology and expertise that have reduced the risk of harm from crop dusting, including the use of "thickening agents," changes in "nozzle arrangement" and research into "what type of conditions would cause a result in drift or off-target movement." He acknowledged "[t]he pilot in 2004 has orders of magnitude, much more ability, if you will, to correct the application to reduce the amount of drift" and "to greatly reduce any overspray or drift."

¶ 17 But this expert also stated in an affidavit that "[t]he risk of contaminating adjacent crops *cannot be eliminated* by the exercising of reasonable care." (Emphasis added.) He further opined: "some small droplets *will move off-target from any aerial application* to a distance dependant on local conditions" (emphasis added), and "[i]t may safely be stated that an aerial application of [pesticides] as occurred in this case (for example) *will* result in the drift of smaller droplets and create damage to an adjacent crop if an analytically detected contaminant pesticide is not registered on the off-target crop."

¶ 18 Finally, Pratt relied on the following deposition testimony from the pilot who applied the pesticides to Pratt's field:

---

**3.** As an intermediate appellate court, we are bound by the decisions of our supreme court; we cannot overrule, modify or disregard them. *State v. Smyers*, 207 Ariz. 314, 318 n. 4, ¶ 15, 86 P.3d 370, 374 n. 4 (2004). Accordingly, our decision in this case is governed by *S.A. Gerrard* and our review is limited to deciding whether the facts, as reflected in the record, demonstrate that crop dusting is still an inherently dangerous activity.

**4.** At oral argument, counsel for San Juan stated the record presented a question of fact whether crop dusting is inherently dangerous if *S.A. Gerrard* did not control the outcome of this case. The superior court also construed the evidence

as presenting a disputed issue of fact. We disagree.

**5.** Because the record before us does not present a disputed issue of material fact regarding the inherently dangerous nature of crop dusting, we need not address whether a judge or jury should decide the question. *Compare McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir.1997) (if "reasonable minds could differ as to whether an activity is inherently dangerous, the determination is a question of fact to be determined by the fact-finder") with *Valdez v. Yates Petroleum Corp.*, 141 N.M. 381, 155 P.3d 786, 788 (Ct.App.2007) ("Whether an activity is inherently dangerous is a question of law.").

Q. In this particular case, if you had flown this with the wind out of the east, you would agree that would have eliminated any chance of drift?

A. Yes, sir.

This testimony, however, does not support Pratt's argument that the risk of harm could have been eliminated through the exercise of reasonable care. Flying in any one direction does not prevent sudden gusts or shifts in wind direction,[6] and such changes in wind conditions create a risk of drift which cannot be eliminated through the exercise of reasonable care.

¶ 19 The "very great likelihood" of the drift of poisonous chemicals is precisely the reason why our supreme court in *S.A. Gerrard* concluded, under the facts of that case, that crop dusting was inherently dangerous. 42 Ariz. at 507, 27 P.2d at 680. *S.A. Gerrard* does not stand alone; courts throughout the United States have reached the same conclusion.[7] *See, e.g., Emelwon, Inc. v. United States,* 391 F.2d 9, 11–13 (5th Cir.1968) (citing *S.A. Gerrard*); *Boroughs v. Joiner,* 337 So.2d 340, 343 (Ala.1976); *McCorkle Farms, Inc. v. Thompson,* 79 Ark.App. 150, 84 S.W.3d 884, 891 (2002); *Miles v. A. Arena & Co.,* 23 Cal.App.2d 680, 73 P.2d 1260, 1262 (1937); *Russell v. Windsor Props., Inc.,* 366 So.2d 219, 223 (La.Ct.App.1978); *Lawler v. Skelton,* 241 Miss. 274, 130 So.2d 565, 569 (1961); *Pendergrass v. Lovelace,* 57 N.M. 661, 262 P.2d 231, 232 (1953) (citing *S.A. Gerrard*); *Loe v. Lenhardt,* 227 Or. 242, 362 P.2d 312, 318 (1961).[8]

¶ 20 In summary, despite technological advances, the facts in this case demonstrate, as did the facts in *S.A. Gerrard,* that crop dusting is an inherently dangerous activity. The "very great likelihood" the pesticides will spread to and damage neighboring property and what is on that property creates a risk of harm that cannot be eliminated through the exercise of reasonable care.

## CONCLUSION

¶ 21 The judgment of the superior court is affirmed.

CONCURRING: DONN KESSLER, Judge, and JOHN C. GEMMILL, Judge.

---

**6.** We note the ADA official who investigated the contamination of San Juan's crops acknowledged in his deposition that "strange things can happen with winds" and testified the risks of sudden wind shift were "especially" prevalent in the area of San Juan's and Pratt's crops because of its topography.

**7.** *S.A. Gerrard* has also been cited with approval in two subsequent Arizona cases involving the aerial application of pesticides. *See Crouse v. Wilbur–Ellis Co.,* 77 Ariz. 359, 365, 272 P.2d 352, 356 (1954) ("It is settled law in Arizona that the risk of harm to neighboring property from dusting or spraying crops by airplane is very great, so great in fact that liability for such harm cannot be avoided by hiring an independent contractor to perform such work."); *Lundberg v. Bolon,* 67 Ariz. 259, 264, 194 P.2d 454, 457 (1948).

**8.** We also note that both our legislature and the ADA have recognized the dangers posed by crop dusting. *See* A.R.S. §§ 3–361 to –383 (2002 & Supp.2008); A.A.C. R3–3–301 to –310. The legislature regulates this activity in part to avoid the serious potential harm that can be caused by pesticides and chemical drift. *See* A.R.S. § 3–365(D) (Supp.2008) (prohibiting aerial applications of highly toxic pesticides within a "buffer zone" of "one-fourth mile of schools, child care group homes, or day care centers"). In furtherance of this objective, a regulation promulgated by the ADA pursuant to its statutory authority states: "[a] person shall not allow drift that causes any unreasonable adverse effect." A.A.C. R3–3–301(D). Violation of this regulation can result in a criminal penalty, as it did for Tri-Rotor's pilot in this case. *See* A.R.S. § 3–370 (2002).