NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CASH HASSE, *Plaintiff/Appellant,*

*v.*

CITY OF AVONDALE, *Defendant/Appellee.*

No. 1 CA-CV 22-0361
FILED 2-21-2023

Appeal from the Superior Court in Maricopa County
No. CV2019-014234
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

COUNSEL

Yen Pilch Robaina & Kresin, PLC, Phoenix
By Caroline A. Pilch, Michael Pang
*Counsel for Plaintiff/Appellant*

Schneider & Onofry, P.C., Phoenix
By Jon D. Schneider, ReNae A. Nachman, Dee R. Giles
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge Randall M. Howe joined.

---

**W I L L I A M S**, Judge:

¶1 Cash Hasse worked as a street-light electrician for a private employer. Hasse sued the City of Avondale for life-threatening injuries he sustained after contacting a high-voltage overhead powerline. The superior court granted summary judgment for the City. Hasse appeals. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Utility Construction Company ("UCC") is licensed in Arizona to perform a variety of electrical work, including work related to electrical transmission lines. Over several years, various municipalities hired UCC to replace damaged city street-light poles.

¶3 In October 2018, a City employee asked UCC to replace two rusted street lights as soon as possible, but no later than the next month. That same day, the same City employee emailed Salt River Project ("SRP"). He wrote, "We noticed your SRP Pole is rusted at the base and has holes in it. You may want to have someone do an inspection on it. We are replacing two rusted street light poles that are right next to your rusted power pole. Here are pictures and a map for you."

¶4 That next day, UCC submitted a traffic control plan to the City to repair the street lights on October 31st. Two days before the repair, SRP emailed the City informing that the pole in question belonged to Arizona Public Service ("APS"). On October 30th, the City approved UCC's traffic control plan, but never notified UCC that the rusted powerline pole belonged to APS, nor did it notify APS that UCC would be working near its rusted power line.

¶5 On October 31st, Hasse and a UCC crew attempted to replace the rusted street-light poles. Using a sling attached to a crane, they removed one pole from its foundation. Hasse stood on the ground, guiding the pole by hand, when it contacted a 69,000-volt (69 kV) overhead APS powerline. Hasse was knocked unconscious and fell to the ground. His pants and boots

caught fire. His legs were severely burned. Hasse was hospitalized for 70 days. His medical costs exceed $1,000,000.00.

¶6 Hasse sued the City alleging that it acted negligently by (1) "fail[ing] to notify APS that street lights in close proximity to high-voltage overhead lines owned by APS were scheduled to be [replaced]," and (2) hiring UCC to perform the work without ensuring UCC would use "properly trained, qualified, and competent workers" with adequate supervision.[1]

¶7 The City moved for summary judgment on both counts. The superior court obliged. The City then moved for an award of fees, costs, and sanctions against Hasse. Over Hasse's objection, the court awarded the City $8,184.89 in costs, $10,653.76 in double costs, and $5,550.00 in expert fees. Hasse timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶8 Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment de novo, *Dreamland Villa Cmty. Club, Inc. v. Rainey*, 224 Ariz. 42, 46, ¶ 16 (App. 2010), viewing the facts and reasonable inferences in the light most favorable to Hasse, *Rasor v. Nw. Hosp.*, LLC, 243 Ariz. 160, 163, ¶ 11 (2017), but will affirm if the superior court was correct for any reason, *Dreamland*, 224 Ariz. at 46, ¶ 16.

*I. Negligence*

¶9 First, Hasse claims the City was negligent. To establish negligence, Hasse must prove: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563–64, ¶ 7 (2018). Duty is an "obligation, recognized by law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Ontiveros v. Borak*, 136 Ariz. 500, 504 (1983) (quoting William Prosser, *Handbook on the Law of Torts* § 30, at 143 (4th ed. 1971)). Whether a duty exists is a threshold matter of law we review de novo. *Diaz*

---

[1] Hasse also sued APS, but later dismissed that claim by stipulation.

*v. Phoenix Lubrication Serv., Inc.*, 224 Ariz. 335, 338, ¶ 12 (App. 2010). A negligence action cannot be maintained absent a duty. *Id.*

**¶10** A duty towards others may also be imposed by statute. *Alhambra Sch. Dist. v. Superior Court In & For Cnty. of Maricopa*, 165 Ariz. 38, 42 (1990). Hasse argues the City had a duty to protect him against the risk of electrocution under the Arizona Overhead Power Lines Safety and Restriction Act ("the Act"). A.R.S. §§ 40-360.41–45. Section 40-360.42(1) states:

> A person or business entity shall not, individually or through an agent or employee, require any other person to perform any function or activity upon any land, building, highway or other premises if at any time during the performance of any function or activity it is possible that the person performing the function or activity could move or be placed closer to any high voltage overhead line or if it is possible that any part of any tool or material used by the person could be brought closer to any high voltage overhead line during the performance of any function or activity than the following clearances:
>
> . . .
>
> (b) For lines rated over fifty kv, six feet plus four-tenths of an inch for each kv over fifty kv.

**¶11** One exception to this statutory duty exists under A.R.S. § 40-360.43(A), which provides in part:

> [T]he person or business entity responsible for performing the work shall promptly notify the public utility operating the high voltage overhead line. The person or business entity may perform the work only after satisfactorily mutual arrangements, including coordination of work and constructions schedules, have been made between the public utility operating the lines and the person or business entity responsible for performing the work.

**¶12** The statute lists (1) separation barriers to prevent contact between people and high voltage overhead lines or (2) temporary de-energization of the power lines as but two examples of permissible arrangements. A.R.S. § 40-360.43(A).

¶13        Hasse argues the City is a "person or business entity" that required him to perform an activity that caused him to contact a high voltage powerline without the appropriate safeguards, and therefore violated its duty to him under § 40-360.42.

¶14        Section 40-360.41(4) defines a "person or business entity" as "those parties who contract to perform any function or activity upon any land, building, highway or other premises." Hasse contends this definition includes all contracting parties—both those who contract to perform the work and those who contract to have it performed.

¶15        "Our task in statutory construction is to effectuate the text if it is clear and unambiguous." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19, ¶ 9 (2018). "If the statute is subject to only one reasonable interpretation, we apply it without further analysis." *Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017) (quoting *Wade v. Ariz. State Ret. Sys.*, 241 Ariz. 559, 561 ¶ 10 (2017)).

¶16        The plain language of § 40-360.41(4) does not support Hasse's interpretation. The City did not contract to perform the work, only to *have it performed*. A.R.S. § 40-360.43; *Arizona Pub. Serv. Co. v. Shea*, 154 Ariz. 350, 353 (App. 1987) ("[Having] this court include in the words 'contract to perform' not only the employer who carries out work in close proximity to an overhead power line, but also the party who enters into a contract with that employer to have the work performed . . . [would distort] the plain language of [§ 40–360.41].").

¶17        Hasse relies on *Cohen v. Salt River Project*, 153 Ariz. 326, 329 (App. 1987). But the issue there was whether § 40-360.42 applied to both general contractors and subcontractors who contract to perform the work, not whether the statute applied to property owners. *Id.* at 330. *Cohen* does not support Hasse's position.

¶18        The City's failure to notify APS about its rusted powerline or the scheduled street light removal, though perplexing, was not a violation of any statutory duty or agreement with UCC. *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356 (1985) (Holding that if "the defendant was [not] under an obligation to use some care to avoid or prevent injury to the plaintiff . . . the defendant is not liable even though he may have acted negligently in light of the foreseeable risks.").

*II.     Negligent Hiring*

**¶19**          Second, Hasse claims the City negligently hired UCC. A plaintiff asserting a claim of negligent hiring must present sufficient evidence that an employer knew or should have known that an independent contractor was not competent to perform its duties. *See* Restatement (Second) of Torts § 411 (1965).

**¶20**          The City claims that nothing shows it knew or should have known UCC was incompetent. The City marshals several facts to support this point, including that multiple municipalities had previously retained UCC, that UCC held a general engineering license as well as an electrical and transmission lines license, and that UCC's license record showed no suspensions or disciplinary proceedings.

**¶21**          Hasse counters that the City did not hire UCC to work on power transmission lines in this case and that no evidence shows the City knew any of these facts before Hasse was injured. Even still, Hasse has the burden to show the City's actual or constructive knowledge of UCC's negligence. The only fact Hasse raises to that effect, is that he and the UCC crew did not have a foreman or a safety meeting on the day of the accident. But nothing in the record indicates the City knew or should have known that. On the contrary, evidence shows the City did not supervise UCC's work or attend pre-construction safety meetings, nor was it required to. On this record, Hasse's claim against the City for negligent hiring fails.

*III.     Inherently Dangerous Activity*

**¶22**          As part of Hasse's negligent hiring claim, he also argues the City is vicariously liable for UCC's negligence because street light removal next to power lines is an inherently dangerous activity.

**¶23**          An employer is not ordinarily liable for the negligent acts of its independent contractors. *Pride of San Juan, Inc. v. Pratt*, 221 Ariz. 337, 339, ¶ 8 (App. 2009). Though UCC was an independent contractor, not a City employee, Hasse argues that because removing street lights close to high-voltage overhead lines is an inherently dangerous activity, the inherently dangerous activity exception applies.

**¶24**          Employers can be vicariously liable for negligence of independent contractors hired to perform inherently dangerous activities. *Id.* at 339, ¶ 9. Two factors determine whether an activity is inherently dangerous: (1) whether the risk of harm can be eliminated through the

6

exercise of reasonable care; and (2) whether the risk is to the person or land or chattels of another. *Id.* at 340, ¶ 11.

**¶25** No Arizona court has directly determined whether working in the vicinity of high-voltage powerlines is an inherently dangerous activity. But nothing in the record indicates that reasonable precautions, such as those outlined in § 40-360.43, would be incapable of eliminating the attendant risks. The issue here is simply that those precautions *were not taken.* Thus, we cannot say that this case constitutes an inherently dangerous activity.

*IV.    Disputed Facts*

**¶26** Hasse also claims several disputed material facts should have precluded the superior court from granting summary judgment. He points to disputes about the required traffic control under the City's agreement with UCC, which party had the responsibility for fulfilling the terms and conditions of the contract in the event of subcontracting, the process the City undertakes when requesting a street light replacement, the reasons the City retained UCC, and whether the City has independent capacity to replace the streetlights.

**¶27** Though these facts may be disputed, they are not material to the Hasse's claims before the superior court. *See* Ariz. R. Civ. P. 56(a).

*V.    Burden of persuasion*

**¶28** Hasse next argues the superior court improperly shifted the burden of persuasion from the City to Hasse because the court directed Hasse's attorney to speak first and last and dedicated less time to the City's argument. But the court has broad discretion to control its courtroom and proceedings, including the order of argument it entertains. *See Christy A. v. Arizona Dept. of Economic Sec.*, 217 Ariz. 299, 307–308, ¶¶ 30–31 (App. 2007). Nothing in this record shows the court improperly shifted the burden of persuasion.

*VI.    Costs and Attorney's Fees*

**¶29** The City moved for sanctions under Ariz. R. Civ. P. 68, and an award of costs under A.R.S. § 12-341. Arizona Rule of Civil Procedure 68(g)(1) provides that "A party who rejects an offer, but does not obtain a more favorable judgment, must pay as a sanction . . . the offeror's reasonable expert witness fees and double the taxable costs, as defined in

A.R.S. § 12-332, incurred after the offer date; and . . . prejudgment interest on unliquidated claims accruing from the offer date."[2]

**¶30** On February 9, 2021, the City made a settlement offer of $100,000 to Hasse. Hasse's nonacceptance of that offer rejected it. Ariz. R. Civ. P. 68(c). Later, Hasse failed to obtain a more favorable judgment when he lost both of his claims against the City on summary judgment.

**¶31** The superior court awarded the City $8,184.89 in costs incurred before February 9, 2021; $10,653.76 double taxable costs incurred after February 9, 2021; and $5,550.00 in reasonable expert fees to accrue interest at the statutory rate of 4.50% per annum until satisfied.

**¶32** We review an award of expert witness fees and costs under Rule 68 for an abuse of discretion. *Stafford v. Burns*, 241 Ariz. 474, 484, ¶ 38 (App. 2017).

> *A.* *Expert Witness Fees*

**¶33** Hasse contends that the award for expert fees was unlawful because Rule 68 allows only for reasonable expert witness fees and no evidence shows that the fees the City's witnesses incurred were for any activity that would be "reasonably calculated to produce evidence for presentation at trial." *Flood Control Dist. of Maricopa Cnty. v. Paloma Inv. Ltd. P'ship*, 230 Ariz. 29, 45–46, ¶ 58 (App. 2012).

**¶34** The City's expert witness fees consisted of $5,550.00 in sanctions for fees incurred by experts Michael Cynecki and Troy Little after February 9, 2021. Hasse points out that no trial or testimony occurred in this case and that the City did not take or notice depositions of Cynecki or Little.

**¶35** However, expert witness fees are not limited to those incurred while an expert is testifying. *Id. at 46, ¶ 58*; *Levy v. Alfaro*, 215 Ariz. 443, 445, ¶ 14 (App. 2007) ("Recoverable fees include the witness's time testifying at trial, as well as time spent preparing to testify.").

**¶36** The experts in this case did not have the opportunity to testify because the case was resolved on summary judgment. Nothing in the record indicates that these experts would not testify had the case proceeded

---

[2] A new version of Rule 68 took effect on January 1, 2022. We cite to the version of the Rule at the time the offer was made.

to trial, or that their preparation here would not have been necessary to facilitate that testimony.

### B. Deposition Costs

**¶37** Hasse also contends that the City cannot recover the video-recording costs for its depositions, which totaled $2,440.70, because the City also incurred expenses for creating transcripts. Hasse points to *Reyes v. Frank's Serv. & Trucking, LLC*, 235 Ariz. 605, 611, ¶ 22 (App. 2014), which requires the superior court to consider the "necessity and reasonableness of both modes of preservation" and notes that "actual use may be a relevant consideration." Hasse argues that neither party disclosed or relied on any of the video records of the depositions and therefore the City cannot recover for these costs.

**¶38** Expenses for video-recording depositions are "costs of taking depositions" under § 12-332(A)(2). *Reyes*, 235 Ariz. at 610–11, ¶ 20. However, superior courts must determine whether these costs were "necessary" and "reasonable in amount." *Id.* While actual use may be a relevant consideration, it is not dispositive. *Id.* at 611, ¶ 22. The superior court has discretion to determine whether to award costs for video-recording depositions and nothing in the record indicates it abused that discretion. *Id.* at 611, ¶ 23.

**¶39** Hasse also argues the City is not entitled costs it requested for non-video deposition costs for Joseph Lanute and Anthony Portillo because the City did not rely on either deposition for its motion for summary judgment. Here too, actual use is not required, and we cannot say the court abused its discretion. *Id.*

### C. Opposing Party Expert Fees and Deposition Costs

**¶40** Finally, Hasse argues the City is not entitled to the non-video deposition costs and expert witness fee costs for Don Gifford because Hasse retained him.[3] Similarly, Hasse argues that the City is not entitled to the costs of Martinez's deposition because it was noticed and taken by Hasse and § 12-332(A)(2) only allows for the "[c]ost of *taking* depositions."

---

[3] Hasse also argues the City should be denied costs because it only used small portions of Gifford's testimony, and ultimately sought to preclude his testimony altogether. But as discussed, *supra* ¶ 37–39, actual use, or extent of use, does not determine whether the costs are reasonable or necessary and the superior court did not abuse its discretion in granting these costs to the City.

(Emphasis added). Additionally, the City ordered a PDF transcript of Martinez's depositions "In Lieu of Certified Copy" and Hasse argues that § 12-332(A)(4) only allows for the "[c]ost of certified copies of papers or records" and § 12-333 states that "a copy of a paper not required by law to be copied shall not be allowed and taxed as costs."

**¶41**        Fees paid to an opposing party's expert to obtain their testimony before trial are taxable costs under § 12–332(A)(2). *Rabe v. Cut & Curl of Plaza 75, Inc.*, 148 Ariz. 552, 555 (App. 1986). Likewise, the cost of obtaining transcripts taken by another party is an associated cost of taking the deposition. *Motzer v. Escalante*, 228 Ariz. 295, 297, ¶ 11 (App. 2011); *See also State ex rel. Corbin v. Arizona Corp. Comm'n*, 143 Ariz. 219, 229 (App. 1984). And making copies of those transcripts—digital or otherwise—are also associated costs. *See Motzer*, 228 Ariz. at 297, ¶ 11.

## CONCLUSION

**¶42**        We affirm the superior court's rulings.



AMY M. WOOD • Clerk of the Court
FILED:   AA